IN THE MATTER OF: BRADFORD P. DAILEY, D.D.S., JUDICIAL REVIEW OF THE
DECISION OF THE NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS v.
NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS

No. 8110SC1267

(Filed 1 February 1983)

1. Physicians, Surgeons and Allied Professions § 5— standard of care among dentists—same or similar communities

   The State Board of Dental Examiners erred in phrasing findings and conclusions in terms of a standard of practice observed in "North Carolina" since G.S. 90-21.12 states that the standard of health care provided must be in accordance with the standard of practice among members of the same health care profession with similar training and experience situated in the *same or similar communities.*

2. Physicians, Surgeons and Allied Professions § 5— findings and conclusions of Board of Dental Examiners—sufficiency of evidence to support

   Certain findings and conclusions of the North Carolina Board of Dental Examiners, made pursuant to a hearing conducted to determine whether disciplinary sanctions should be imposed upon plaintiff, were supported by competent substantial evidence even though the evidence was conflicting. However, the evidence did not support certain findings concerning whether plaintiff should have taken an x-ray of an extraction site, should have removed a broken root tip upon a patient's second post-operative visit and whether plaintiff should have filled the canal of a root upon which a root canal was performed with filling material.

APPEAL by plaintiff from *Brannon, Judge.* Judgment entered
24 August 1981. Heard in the Court of Appeals 15 September
1982.

*Sumrell, Sugg & Carmichael, by Rudolph A. Ashton, III, and
Tharrington, Smith & Hargrove, by Steven L. Evans, for plaintiff
appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Ralph
McDonald and Carson Carmichael, III, for defendant appellee.*

JOHNSON, Judge.

On 19 January 1980 the North Carolina State Board of Dental
Examiners (Board) conducted a hearing to determine whether
disciplinary sanctions should be imposed upon appellant, Bradford
P. Dailey, for negligence and malpractice in the practice of dentistry. Based upon its findings of fact and conclusions of law, the

Board pursuant to G.S. 90-41(a)(3) and (4), imposed disciplinary sanctions upon appellant.

On 28 August 1980 appellant petitioned for judicial review of the administrative decision. Judge Smith affirmed the Board's decision in part and reversed in part. The pertinent part of Judge Smith's decision states:

> [T]hat while there is substantial evidence in the record to support the Board's findings and conclusions as to the standard of practice among members of the health care profession of general dentistry, the record before the Court does not contain substantial evidence to support the Board's Findings of Fact 20, 21, 22 and 39 and Conclusions of Law 1, 2, 3, 4, 7 and 8 to the extent that those Findings and Conclusions state the standard of practice among dentists with similar training and experience as the Petitioner and situated in the New Bern, North Carolina community or similar communities.

The court reversed and remanded the case to the Board for further findings of fact and conclusions of law not inconsistent with the judgment of the court.

Upon remand, and without receiving further evidence, the Board entered an amended decision containing what the Board designated as "further" findings of fact and "further" conclusions of law 20(A), 21(A), 22(A), 39(A), 1(A), 2(A), 3(A) and 4(A). These further findings and conclusions did little more than restate the initial set of findings and conclusions in terms of a statewide rather than local community standard for the practice of general dentistry. Again, disciplinary sanctions were imposed. Appellant then petitioned for judicial review of the second agency decision. On 24 August 1981 Judge Brannon affirmed the Board's second decision.

In this appeal appellant contends that the second agency decision was erroneously affirmed for the following reasons: (1) the Board erred in making its further findings and conclusions as to a statewide standard without taking further evidence and (2) there was insufficient evidence to support various findings of fact and conclusions of law concerning appellant's treatment of Ms. Barbara Lanzer in 1977 and Ms. Mayona Baldree in 1978.

In re Dailey v. Board of Dental Examiners

## I

[1]   G.S. 90-21.12 states that the standard of health care provided must be in accordance with the standard of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action. It is clear from the wording of the statute that the test is not that of a statewide standard of health care, but rather a standard of practice among members of the same health care profession situated in the *same or similar communities.*

In appellant's case, that is the standard of practice in the New Bern community or communities similar to it, not the standard of practice in North Carolina generally. The Board's further findings and further conclusions are phrased in terms of a standard of practice observed in "North Carolina." This is error requiring reversal of further Findings of Fact 20(A), 21(A), 22(A), and 39(A) and further Conclusions of Law 1(A), 2(A), 3(A) and 4(A).[1]

## II

Appellant's contention that the Board's findings and conclusions are not supported by the evidence raises the question of the scope of review defined by G.S. 150A-51(5), which provides in part:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if . . . the agency findings, inferences, conclusions, or decisions are unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted.

The standard of judicial review set forth in G.S. 150A-51(5) is known as the "whole record" test. *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). The whole record test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though

---

1. In view of our decision to reverse the "further" findings and conclusions on the basis of utilization of an erroneous standard of practice we do not reach the issue of whether the Board erred in making its further findings without taking additional evidence.

the court could justifiably have reached a different result had the matter been heard before it *de novo. Id.* In *Savings & Loan Association v. Savings & Loan Commission,* 43 N.C. App. 493, 259 S.E. 2d 373 (1979) this Court addressed the whole record test and stated,

> "The reviewing court, while obligated to consider evidence of record that detracts from the administrative ruling, is not free to weigh all of the evidence and reach its own conclusions on the merits. If, after all, of the record has been reviewed, substantial competent evidence is found which would support the agency ruling, the ruling must stand."

*Id.* at 497-98, 259 S.E. 2d at 376.

Substantial evidence in this context has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Thompson v. Board of Education,* 292 N.C. 414, 233 S.E. 2d at 544.

The law of this State is clear regarding the respective roles of the administrative agency and the reviewing court concerning conflicting evidence. In the case of *In re Wilkins,* 294 N.C. 528, 242 S.E. 2d 829 (1978), Wilkins appealed the decision of the Board of Medical Examiners revoking his license. The testimony of the doctor — Wilkins — and his patient was in direct conflict as to the circumstances and purposes for certain prescriptions. In addressing the proper scope of the Board in viewing the conflicting evidence and the proper scope of a judicial review, our Supreme Court stated,

> "The credibility of the witnesses and the resolution of conflicts in their testimony is for the Board, not a reviewing court, and the findings of the Board supported, as these findings are, by competent evidence, are conclusive upon judicial review of the Board's order."

*Id.* at 549, 242 S.E. 2d at 841.

[2] Therefore, we now consider whether the evidence of record is sufficient to support the Board's Findings of Fact 9, 20, 21, 22 and Conclusions of Law 1, 2 and 3 which pertain to appellant's treatment of Ms. Baldree, and finding of fact 39 and conclusions of law 7 and 8 which pertain to treatment rendered Ms. Lanzer.

All evidence of the standard of care relative to the treatment administered Ms. Baldree was received through the testimony of Drs. Hand and Secosky who were both in the same health care profession as appellant and situated in the same community— New Bern—as appellant during the time in question. Their testimony was elicited in response to questions aimed at defining the local standards in New Bern, North Carolina or similar communities.

Drs. Hand and Secosky testified that it is an accepted practice in the New Bern community to advise a patient if a root tip was left in an extraction site. This evidence is undisputed and clearly supports the Board's Finding of Fact 20 that the standard of practice on or about June and July 1978 among members of the health care profession of general dentistry situated in the New Bern, North Carolina community or similar communities was that a dental patient should be told when a root tip had been left in the extraction site.

Appellant next argues that the evidence was insufficient to support the Board's Finding of Fact 9 that appellant did not advise Ms. Baldree that he was not able to remove the broken root tip. The testimony regarding this question is conflicting. Ms. Baldree testified she thought appellant removed the broken root tip on 22 June 1978 and that appellant did not tell her he was not able to remove it. Appellant testified that he told her he was not able to remove the root tip; gave her the option of having him to attempt to remove it surgically, refer her or to leave the root tip in. According to plaintiff, Ms. Baldree chose to leave the root tip in.

The mere existence of conflicting evidence does not permit the reviewing court to weigh the evidence and substitute its determination for that of the Board. The credibility of the witnesses and the resolution of conflicts in their testimony is a matter for the Board, not a reviewing Court. *In re Wilkins, supra.* The question presented is an issue of fact and the Board properly exercised its authority and weighed the conflicting testimony of the witnesses. The Board's Finding of Fact 9 is supported by competent substantial evidence.

Appellant next contends that there was insufficient evidence to support the Board's Findings of Fact 21, 22 and Conclusions of Law 2 and 3 that the standard of practice on or about June and

July 1978 among general dentists in the New Bern community or similar communities was (1) that a dentist should have an x-ray taken of an extraction site if during the process of an extraction a root is broken and, in any event, if an x-ray is not taken at that time, then an x-ray should be taken when the patient later returns complaining of pain; (2) that a dentist who fails to remove a broken root tip and thereafter learns on the patient's second post-operative visit that the patient has a dry socket, should then remove the broken root tip or refer the patient to an oral surgeon.

Dr. Hand testified that the practice in the New Bern community is that when an extraction is done and the dentist knows that there is a broken root tip, an x-ray is taken to determine if it's feasible to leave it. That if an x-ray was not taken at the time the broken root tip was left in and the patient returned complaining of pain, it would be in accordance with good and accepted practice and procedure to take an x-ray at that time. Dr. Hand further testified that anytime a patient is in discomfort a procedure is indicated to relieve that discomfort. A general dentist can perform such procedures or the patient can be referred to an oral surgeon. It would not be unusual to expect Ms. Baldree to have pain for a week or ten days and not unusual to treat her for a dry socket.

Dr. Secosky testified that it is not necessarily a deviation from local standards in the New Bern community not to x-ray before and after an extraction. If the dentist can see the broken root tip there would be no need to x-ray, but if the root tip was not visible, then the standard of practice would be to take an x-ray. If a dry socket developed in the area of the root tip the standard of practice is to leave the root tip in until after the dry socket is treated and cleared and then the dentist can make a determination about the removal of the root tip. A general dentist can do this or refer the patient.

Appellant testified that in his judgment there was no need to do a post-operative x-ray because he had the broken tooth and could see the root tip. Ms. Baldree returned and complained of pain in the site. He examined her and saw the exposed bone but did not see the normal clotting. He diagnosed it at the time as a dry socket by the lack of normal healing and with full knowledge

there was a root tip remaining. He was attempting to solve the immediate problem of the dry socket and then, if so indicated later, he would either attempt to remove the root tip or refer her. The dry socket normally takes a couple of weeks to heal.

The evidence here is conflicting as to whether a dentist who performs an extraction and is aware that a broken root tip remains, should then take an x-ray of the extraction site to determine the feasibility of leaving the root tip. Dr. Hand testified that the local standard of practice requires an x-ray. Dr. Secosky testified that if the dentist can see the root tip then the standard does not require an x-ray. Appellant's testimony that he knew the root tip was there and that it was visible is uncontradicted. Here again, the question presented was one of fact and properly for the Board to decide by exercise of its authority in weighing the conflicting testimony and the credibility of the witnesses. *In re Wilkins, supra.*

We therefore hold that the Board's Finding of Fact 21 and Conclusion of Law 2 that the local standard of practice required appellant to have taken an x-ray of the extraction site to determine whether it was feasible to leave the broken root tip is supported by competent substantial evidence. The Board's Finding of Fact 22 and its Conclusion of Law 3 that the local standard of practice required appellant, on Ms. Baldree's second postoperative visit, to remove the broken root tip himself or refer her to an oral surgeon are not supported by competent substantial evidence. All evidence of record shows that upon Ms. Baldree's post-operative visits complaining of pain, the local standard of practice required appellant to take steps to relieve her of the discomfort; and if a dry socket has developed in the area of the root tip, to treat and clear the dry socket before making a determination about removing the root tip himself or to refer her.

The evidence is uncontradicted that upon Ms. Baldree's second post-operative visit appellant diagnosed a dry socket in the extraction area and took steps to relieve her of the discomfort by treating the dry socket before making a determination about removal of the root tip. All of the evidence here supports appellant's contention that upon Ms. Baldree's post-operative visits, he treated her in accordance with required local standards.

Based upon the evidence supporting the Board's Findings of Fact 9, 20, 21 and Conclusions of Law 1 and 2, we hold that there is substantial competent evidence of record to support the Board's Conclusion of Law 4 which states,

"The acts and omissions on the part of the respondent in his treatment of Mayona Morris Baldree on or about June and July, 1978, do not comply with the standard of practice among members of the health care profession of general dentistry with similar training and experience as a respondent and situated in New Bern, North Carolina or similar communities, and such acts and omissions on the part of the respondent constitute negligence and malpractice in the practice of dentistry within the meaning of N.C.G.S. Sec. 90-41(a)(12) and N.C.G.S. Sec. 90-41(a)(19)."

Appellant next contends that there was insufficient evidence to support the Board's Finding of Fact 39 and Conclusions of Law 7 and 8.

Finding 39 and Conclusion 7 are virtually identical and state:

"The standard of practice on or about October 1977, among members of the health care profession of general dentistry with similar training and experience as the respondent and situated in the New Bern, North Carolina community or similar communities was that when a root canal is performed, the canal of the root is filled with filling material."

Conclusion of Law 8 states:

"The acts and omissions on the part of the respondent in his treatment of Barbara Elaine Lanzer on or about October 1977, do not comply with the standard of practice among members of the health care profession of general dentistry with similar training and experience as a respondent and situated in New Bern, North Carolina or similar communities, and such acts and omissions on the part of the respondent constitute negligence and malpractice in the practice of dentistry within the meaning of N.C.G.S. Sec. 90-41(a)(12) and N.C.G.S. Sec. 90-41(a)(19)."

Based upon sufficient and competent evidence the Board found and concluded on 5 October 1977, appellant performed a root

canal on Ms. Lanzer's first left molar and that appellant did not fill the root canal with any kind of filling material. The question raised is whether appellant's failure to fill the canal with a filling material violated a required standard of care among members of the health care profession of general dentistry. All of the evidence relative to this question was received through the testimony of Drs. Kenneth Gibbs and D. J. Kolzet.

Dr. Gibbs testified that while he personally did not approve of the practice of not filling root canals, it was accepted practice in some communities. He stated he did not know whether it was accepted practice in the New Bern community. Dr. Kolzet testified that in his opinion it was not good and accepted practice to leave a root canal unfilled and close the tooth. It is in the best interest of the healing process to fill the root canal system. Dr. Kolzet was never asked about a standard of practice within North Carolina or any community within this state or any other state. It is clear from his testimony that his opinion on this point is based not on his knowledge of the general standard of practice prevailing in North Carolina or any community within North Carolina or any similar communities, but on his experience in the city of Chicago, Illinois.

We hold that the evidence is insufficient to support the Board's finding and conclusion that "[t]he standard of practice on or about October 1977, among members of the health care profession of general dentistry with similar training and experience as the respondent and situated in the New Bern, North Carolina community or similar communities was that when a root canal is performed, the canal of the root is filled with filling material." Likewise, we hold that the evidence of record is insufficient to support the Board's Conclusion of Law 8. In light of our decision regarding this assignment of error, we do not find it necessary to address appellant's remaining assignments of error relating to the Board's findings and conclusions regarding treatment rendered Ms. Lanzer.

In conclusion, we affirm the Board's Findings of Fact 9, 20, and 21 and Conclusions of Law 1, 2, and 4. We reverse Findings of Fact 22 and 39 and Conclusions of Law 3, 7 and 8 and reverse further Findings of Fact 20(A), 21(A), 22(A) and 39(A) and further Conclusions of Law 1(A), 2(A), 3(A) and 4(A). This case is to be

remanded to the Superior Court, and the Superior Court is directed to remand the case to the North Carolina State Board of Dental Examiners directing the Board to enter findings of fact and conclusions of law not inconsistent with the opinion of this Court.

Affirmed in part, reversed in part and remanded.

Chief Judge MORRIS and Judge BECTON concur.