YVETTE P. TUCKER AND LARRY TUCKER, PLAINTIFFS-APPELLANTS v. DR. PAUL J. MEIS, AND NORTH CAROLINA BAPTIST HOSPITALS, DEFENDANTS-APPELLEES

No. COA96-1293

(Filed 5 August 1997)

**Evidence and Witnesses § 2250 (NCI4th)— medical malpractice—negligence—medical expert—standard of care—community**

In a medical malpractice action, the trial court properly excluded the testimony of plaintiff's medical expert where the expert testified that he was familiar with the standard of care in North Carolina but failed to testify that he was familiar with the standard of care in the community in which the alleged negligence took place or in similar communities as required by N.C.G.S. § 90-21.12.

Appeal by plaintiffs from orders entered 16 May and 24 June 1996 by Judge H.W. Zimmerman, Jr. in Iredell County Superior Court. Heard in the Court of Appeals 22 May 1997.

*Marsha C. Hughes Grayson for plaintiffs-appellants.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Tamura D. Coffey, for defendants-appellees.*

WYNN, Judge.

Plaintiffs, Yvette P. Tucker and her husband, Larry Tucker, brought this medical malpractice action to recover for an allegedly negligently repaired episiotomy performed on Mrs. Tucker following child birth in Winston-Salem, North Carolina.

At trial, plaintiffs presented two expert witnesses: An OB-GYN specialist licensed in Virginia and Tennessee who had been practicing in Tennessee and Mrs. Tucker's treating psychologist. After finding that plaintiffs failed to present competent medical testimony establishing the standard of care or defendants' breach thereof, the trial court granted directed verdict in defendants' favor. Plaintiffs appeal.

Although plaintiffs raise several issues on appeal, only one need be addressed by us: Whether the trial court erred by excluding the testimony of their medical expert as to the standard of care. We

answer: No, and therefore affirm the trial court's order granting directed verdict to defendants.

Plaintiffs contend that although their medical expert, Dr. Tasker, testified that he was familiar with the standard of care in North Carolina, the trial court improperly sustained objections when counsel asked him to testify as to what that standard was and whether it was breached by defendants. They argue that since the trial court based its directed verdict on plaintiffs' failure to establish the standard of care and defendants' breach, this error was prejudicial and warrants a new trial. We disagree.

N.C. Gen. Stat. § 90-21.12 prescribes the relevant standard of care in a medical malpractice action—"the standards of practice among members of the same health care profession with similar training and experience situated *in the same or similar communities* at the time of the alleged act giving rise to the cause of action." (emphasis added). In *Page v. Wilson Memorial Hospital,* 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980), we said: "By adopting the 'similar community' rule in G.S. 90-21.12 it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers. . . ."

After reviewing Dr. Tasker's testimony in its entirety, we find that the record indicates he failed to testify in any instance that he was familiar with the standard of care in Winston-Salem or similar communities. Although Dr. Tasker testified that he was familiar with the standard of care in North Carolina, he failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community. Notably, we agree with plaintiffs that the phrasing of the questions used to elicit the standard of care need not follow § 90-21.12 verbatim; to so require would improperly place form over substance. However, the questions asked must elicit the relevant standard of care as set out in that statute. Moreover, while we recognize that "changes in the rural-urban population pattern of the country and changes in medical education, training, and communication have led to greater standardization of medical practices," *Wiggins v. Piver,* 276 N.C. 134, 140, 171 S.E.2d 393, 397 (1970), N.C.G.S. § 90-21.12 mandates that the relevant standard of care is that of the community where the injury occurred (or similar communities) and not that of the state as a whole. *See Dailey v. North Carolina State Bd. of Dental Exmrs.,* 60 N.C. App. 441, 299 S.E.2d 473, *rev'd on other grounds,* 309 N.C. 710, 721, 309

## BIGGERS v. JOHN HANCOCK MUT. LIFE INS. CO.

[127 N.C. App. 199 (1997)]

S.E.2d 219, 225 (1983) (noting that "[i]t is clear from the wording of this statute that the test is not that of a statewide standard of health care."). This community standard allows for consideration of the effect that variations in facilities, equipment, funding, etc., throughout the state might have on the standard of care.

In sum, the problem with Dr. Tasker's testimony was not that he had not practiced in North Carolina; rather, it was his failure to testify that he was familiar with the standard of care in Winston-Salem or similar communities. Without such testimony, Dr. Tasker's opinion as to a standard of care for the State of North Carolina and whether defendants met that standard was irrelevant. The plain language of N.C.G.S. § 90-21.12 requires this result; therefore, we must hold that the trial court correctly sustained defendants' objections to Dr. Tasker's testimony.

Our holding makes it unnecessary to address plaintiffs' remaining issues. Accordingly, we affirm the trial court's order granting directed verdict for defendants.

Affirmed.

Judges LEWIS and MARTIN, John C., concur.