**HENRY v. SOUTHEASTERN OB-GYN ASSOCS., P.A.**

[142 N.C. App. 561 (2001)]

BRENDA HENRY AND FOSTER HENRY INDIVIDUALLY, AND BRENDA HENRY AS GUARDIAN AD LITEM FOR CRYSTAL HENRY, A MINOR CHILD, PLAINTIFFS V. SOUTHEASTERN OB-GYN ASSOCIATES, P.A., JAMES L. PRICE, M.D., AND LAIF LOFGREN, M.D., DEFENDANTS

No. COA00-37

(Filed 3 April 2001)

**Medical Malpractice— relevant standard of care—"similar community" rule**

The trial court did not err in a medical malpractice case by directing verdict in favor of defendants based on the trial court's conclusion that plaintiffs failed to present competent medical testimony establishing the relevant standard of care under N.C.G.S. § 90-21.12 for prenatal and obstetrical care, because: (1) N.C.G.S. § 90-21.12 adopted the "similar community" rule to avoid the adoption of a national or regional standard of care for health providers; (2) the testimony of a doctor practicing in Spartanburg, South Carolina failed to show he was familiar with the standard of care in Wilmington or similar communities; and (3) a national standard cannot be applied to defendants' conduct in this case concerning the prenatal care of a patient with gestational diabetes and the delivery of an infant suffering from shoulder dystocia.

Judge GREENE concurring

Judge HUDSON dissenting.

Appeal by plaintiffs from order entered 20 September 1999 by Judge Russell J. Lanier, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 13 February 2001.

*Britt & Britt, P.L.L.C., by William S. Britt, for plaintiff appellants.*

*Walker, Clark, Allen, Herrin & Morano, L.L.P., by O. Drew Grice, Jr., and Robert D. Walker, Jr., for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs Mr. and Mrs. Henry brought this medical malpractice action on behalf of themselves and their daughter, Crystal Henry, seeking recovery for the allegedly negligent prenatal and obstetrical care rendered by defendants. At trial, plaintiffs tendered one expert

witness: Dr. Chauhan, an OB-GYN specialist practicing in Spartanburg, South Carolina, and licensed in South Carolina and Georgia. After finding that plaintiffs failed to present competent medical testimony establishing the relevant standard of care, the trial court granted directed verdict in defendants' favor. Plaintiffs appealed from this judgment.

Plaintiffs argue that the trial court erred in excluding their medical expert's testimony as to the applicable standard of care, and, as a result, subsequently directing verdict in favor of defendants. We find no error by the trial court and therefore affirm directed verdict for defendants.

Plaintiffs contend that, although Dr. Chauhan was unfamiliar with the medical community in Wilmington, North Carolina, where defendants practice and the alleged malpractice occurred, he could nevertheless competently testify to the prevailing standard of prenatal and obstetrical care in Wilmington because he was familiar with the applicable national standard of care. Plaintiffs further argue that Dr. Chauhan was familiar with the standard of care in Spartanburg, South Carolina, and that this standard would be the same standard applied at Duke Hospital in Durham, North Carolina, or at UNC-Hospital in Chapel Hill, North Carolina. Thus, argue plaintiffs, Dr. Chauhan could testify to the applicable standard of care in Wilmington even though he was unacquainted with its medical community.

N.C. Gen. Stat. § 90-21.12 prescribes the relevant standard of care in a medical malpractice action:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical . . . care, the defendant shall not be liable . . . unless . . . the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in *the same or similar communities* at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (1999) (emphasis added). The report of a study commission recommending adoption of N.C. Gen. Stat. § 90-21.12 makes clear that the legislature intended to avoid a national standard of care for North Carolina health care providers:

The North Carolina Supreme Court has gone only as far as a "same or similar communities" standard of care, and the Commission recommends that this concept be enacted into the General Statutes to avoid further interpretation by the Supreme Court which might lead to regional or national standards for all health care providers.

North Carolina Professional Liability Insurance Study Commission, Report to the Gen. Assembly of 1976, 32 (1976). This Court has also stated that "[b]y adopting the 'similar community' rule in G.S. 90-21.12 it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers . . . ." *Page v. Hospital*, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980). *See also Thompson v. Lockert*, 34 N.C. App. 1, 4-5, 237 S.E.2d 259, 261, *disc. review denied*, 293 N.C. 593, 239 S.E.2d 264 (1977) (specifically rejecting the application of a general or national standard of care for even a "highly trained and certified specialist"); Robert G. Byrd, *The North Carolina Medical Malpractice Statute*, 62 N.C.L. Rev. 711, 734, 740 (1984) (noting that the "North Carolina General Assembly's apparent purpose in codifying the same or similar community standard for health care providers was to foreclose judicial adoption of a regional or national standard" and that such an adoption would be "inconsistent with North Carolina case law and statutes").

After reviewing Dr. Chauhan's testimony in its entirety, we find that the record indicates he failed to testify in any instance that he was familiar with the standard of care in Wilmington or similar communities. Although Dr. Chauhan testified that he was familiar with the national standard of care, there is no evidence that the national standard of care is the standard practiced in Wilmington. See *Tucker v. Meis*, 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997) ("Although [the expert witness] testified that he was familiar with the standard of care in North Carolina, he failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community."). Moreover, there is no evidence in the record that the standard of care practiced in Wilmington is the same standard that prevails in Durham or Chapel Hill, or that these communities are the "same or similar."

In *Tucker*, a recent case remarkably similar to the one before us, plaintiffs sought to recover from defendants physician and hospital "for an allegedly negligently repaired episiotomy performed on [plaintiff patient] following child birth in Winston-Salem, North

Carolina." *Tucker*, 127 N.C. App. at 197, 487 S.E.2d at 828. The trial court found, and this Court affirmed, that plaintiffs' expert witness could not establish the standard of care, and that therefore directed verdict for defendants was proper. Because plaintiffs' witness was familiar only with the standard of care in North Carolina, rather than the standard of care in Winston-Salem, his testimony was "irrelevant." *Tucker*, 127 N.C. App. at 199, 487 S.E.2d at 829. The *Tucker* Court further noted that the "same or similar communities" standard "allows for consideration of the effect that variations in facilities, equipment, funding, etc., throughout the state might have on the standard of care." *Id.* Thus, it is clear that the concept of an applicable standard of care encompasses more than mere physician skill and training; rather, it also involves the physical and financial environment of a particular medical community. The *Tucker* Court concluded that "the problem with [plaintiffs' expert witness'] testimony was not that he had not practiced in North Carolina; rather, it was his failure to testify that he was familiar with the standard of care in Winston-Salem or similar communities." *Id.*

Plaintiffs nevertheless argue that a uniform standard of care governs prenatal and obstetrical care to which Dr. Chauhan could competently testify. Plaintiffs note that, "if the standard of care for a given procedure is 'the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community[.]' " *Marley v. Graper*, 135 N.C. App. 423, 428, 521 S.E.2d 129, 134 (1999) (quoting *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984), *cert. denied*, 313 N.C. 329, 327 S.E.2d 889 (1985)), *cert. denied*, 351 N.C. 358, 542 S.E.2d 214 (2000). This Court, however, has recognized very few "uniform procedures" to which a national standard may apply, and to which an expert may testify. *See, for example, Haney*, 71 N.C. App. at 736, 323 S.E.2d at 434 (allowing expert medical witness to testify that taking and reporting vital signs of a deteriorating patient was the same for nurses in accredited hospitals across the country); *Page*, 49 N.C. App. at 536, 272 S.E.2d at 10 ("nursing practices in connection with patients' use of a bedpan are so routine and uncomplicated that the standard of care should not differ appreciably between . . . neighboring counties").

The case before us concerns the prenatal care of a patient with gestational diabetes and the delivery of an infant suffering from shoulder dystocia. Such a scenario involves medical procedures considerably more complicated than the taking of vital signs or the place-

ment of bedpans. Accordingly, a national standard cannot be applied to defendants' conduct.

Furthermore, plaintiffs' reliance upon *Marley* is misplaced. In *Marley*, plaintiffs contended that the trial court erred in allowing testimony by defendants' expert witness, who stated that the defendant physician "*met* the standard of care for plastic surgery not only in [Greensboro] but anywhere in the United States." *Marley*, 135 N.C. App. at 430, 521 S.E.2d at 134 (emphasis added). Affirming the trial court, this Court stated that "[a]lthough the [expert] witness did not testify that he was familiar with the standard of care for Greensboro, the testimony he did provide *obviated the need for such familiarity.*" *Id.* (emphasis added). The Court explained that, because the expert testified that defendant's performance "met the highest standard of care found anywhere in the United States," the Court reasoned that "if the standard of care for Greensboro matched the highest standard in the country, [defendant's] treatment of [plaintiff] met that standard; if the standard of care in Greensboro was lower, [defendant's] treatment of [plaintiff] exceeded the area standard." *Marley*, 135 N.C. App. at 430, 521 S.E.2d at 134. Thus, the testimony was "sufficient to meet the requirements of section 90-21.12," and the trial court did not err in allowing the witness to testify. *Id.*

In the instant case, plaintiffs failed to establish that their expert was familiar with the standard of care practiced in Wilmington or a similar community. Further, unlike *Marley*, Dr. Chauhan would have testified that defendants *failed* to meet the national standard of care, creating an obvious need for the establishment of the applicable standard through proper testimony. Even if Dr. Chauhan was familiar with the standard of care in Chapel Hill or Durham, there was no evidence that a similar standard of care prevailed in Wilmington. "N.C.G.S. § 90-21.12 mandates that the relevant standard of care is that of the community where the injury occurred (or similar communities) and not that of the state as a whole." *Tucker*, 127 N.C. App. at 198, 487 S.E.2d at 829. To adopt plaintiffs' argument, this Court would have to ignore the plain language of N.C. Gen. Stat. § 90-21.12 and its evidentiary requirement that the "similar community" rule imposes, as well as well-established case law. This we decline to do. *See Baynor v. Cook*, 125 N.C. App. 274, 277, 480 S.E.2d 419, 421, *disc. review denied*, 346 N.C. 275, 487 S.E.2d 537 (1997) (rejecting plaintiff's assertion that our law "allows a doctor's conduct to be judged against a national standard of care when the standard of care is the same across the country"); *In re Dailey v. Board of Dental*

*Examiners*, 60 N.C. App. 441, 443, 299 S.E.2d 473, 475 (1983) (noting that "[i]t is clear from the wording of [N.C. Gen. Stat. § 90-21.12] that the test is not that of a statewide standard of health care"); *Tucker*, 127 N.C. App. at 197, 487 S.E.2d at 829; *Thompson*, 34 N.C. App. at 4, 237 S.E.2d at 261.

As Dr. Chauhan was unfamiliar with the relevant standard of care, his opinion as to whether defendants met that standard is unfounded and irrelevant, and thus we hold that the trial court properly excluded Dr. Chauhan's testimony. There being no other expert witnesses to establish defendants' negligence, defendants were entitled to a directed verdict as a matter of law. In light of our holding, we need not address further argument by defendants. The trial court is hereby

Affirmed.

Judge GREENE concurs with separate opinion.

Judge HUDSON dissents.

GREENE, Judge, concurring.

I agree with Judge McCullough that Dr. Chauhan's testimony failed to establish Dr. Chauhan was familiar with the standard of practice of health care providers situated in Wilmington or "similar communities" at the time of the alleged negligent acts and that a directed verdict was, therefore, properly granted in favor of defendants. I write separately to emphasize that testimony regarding a uniform standard of care may be used to establish the applicable standard of care in a specific community *only* when the alleged negligent treatment of the plaintiff occurred in an accredited hospital.

In *Rucker v. High Point Mem'l Hosp., Inc.*, 285 N.C. 519, 206 S.E.2d 196 (1974), the North Carolina Supreme Court held that an expert's testimony regarding the standard of care for the treatment of gunshot wounds *in accredited hospitals* in the United States was sufficient to establish the applicable standard of care for such treatment in an accredited hospital located in High Point. *Id.* at 527-28, 206 S.E.2d at 201-02. The *Rucker* court emphasized it was "not dealing with a local country doctor[,]" [but] "with a *[d]uly accredited hospital* and a member of its staff." *Id.* at 527, 206 S.E.2d at 201. Thus, the teaching of *Rucker* is limited to cases involving the standard of

**HENRY v. SOUTHEASTERN OB-GYN ASSOCS., P.A.**

[142 N.C. App. 561 (2001)]

care practiced in accredited hospitals when a plaintiff's alleged negligent treatment took place in an accredited hospital. Indeed, this Court has held that the teaching of *Rucker* is "applicable only to the standard of care of 'accredited hospitals' in the treatment of a wound, the treatment for which was shown to be standard in 'accredited hospitals' throughout the United States." *Thompson v. Lockert*, 34 N.C. App. 1, 4, 237 S.E.2d 259, 261, *disc. review denied*, 293 N.C. 593, 239 S.E.2d 264 (1977). Admittedly, this Court has stated that "if the standard of care for a given procedure is 'the same across the county, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community.' " *Marley v. Graper*, 135 N.C. App. 423, 428, 521 S.E.2d 129, 134 (1999) (quoting *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984), *cert. denied*, 313 N.C. 329, 327 S.E.2d 889 (1985)), *cert. denied*, 351 N.C. 358, —— S.E.2d —— (2000). The cases relied upon by the *Marley* court in stating this general rule, however, are cases involving the standard of care in accredited hospitals when the plaintiff's alleged negligent treatment took place in an accredited hospital. *Id.* The general rule stated in *Marley* is thus limited to cases involving the standard of care for treatment that takes place in an accredited hospital. Additionally, as noted by the majority, *Marley* involved the relevancy of testimony by a *defendant's* expert that the defendant's treatment of the plaintiff met the highest standard of care for such treatment nationwide. *Id.* at 430, 521 S.E.2d at 134. Thus, the issue addressed in *Marley* is distinguishable from the issue before this Court in the case *sub judice*.

The dissent appears to agree that the applicable standard of care under N.C. Gen. Stat. § 90-21.12 is the standard of care practiced in "the same or similar communities" where the act giving rise to the plaintiff's cause of action occurred. The dissent would, nevertheless, permit "the jury to consider factual evidence of the existence of a national standard of care in the process of determining the standard of care in the community in question." The dissent states "[s]uch evidence is clearly some evidence of the standard of care in the community in question." I disagree. Under section 90-21.12, the relevant inquiry is what standard of care is *actually practiced* in the community in question or "similar communities." The existence of a national standard of care has no relevance to this inquiry absent testimony the national standard of care is *actually practiced* in the community or communities in question. A jury, therefore, would be unable to find as fact based solely on testimony regarding the existence of a national standard of care that the national standard of care is *actually prac-*

*ticed* in the relevant community or communities. Additionally, the dissent's reliance on *Baynor v. Cook,* 125 N.C. App. 274, 480 S.E.2d 419, *disc. review denied,* 346 N.C. 275, 487 S.E.2d 537 (1997), is not persuasive. The issue presented in *Baynor* was whether the plaintiff was entitled to a jury instruction regarding the existence of a national standard of care, and this Court held the plaintiff was not entitled to such an instruction. *Id.* at 277, 480 S.E.2d at 421. In *Baynor,* the issue of whether the trial court properly allowed the plaintiff's experts to testify as to the existence of a national standard of care, without testimony that the national standard of care was actually practiced in the relevant community or communities, was not before this Court.

HUDSON, Judge dissenting.

In the case at bar, plaintiffs' expert witness was prepared to testify at trial that the standard of care for prenatal treatment in Wilmington, North Carolina in 1990 was the same as the standard of care for prenatal treatment in any other location in the United States, and that he was familiar with this standard. He was further prepared to testify that defendants failed to employ certain fundamental medical procedures in their rendering of prenatal care. However, the trial court excluded this testimony at trial on the grounds that the expert had testified during his deposition that he did not know anything about Wilmington, North Carolina, the city in which defendants practice. Because his testimony was excluded in large part, the trial court granted defendants' motion for a directed verdict. The issues on appeal are (1) whether the trial court erred in excluding the expert's testimony at trial, and (2) whether such testimony, had it been admitted, would have satisfied the "same or similar" community standard pursuant to N.C.G.S. § 90-21.12 (1999). I believe the trial court erred in excluding the testimony, and that the testimony would have satisfied the statute.

In medical malpractice actions against individual health care providers, G.S. § 90-21.12 requires that testimony must be presented concerning the standard of care in "the same or similar communities." *See Thompson v. Lockert,* 34 N.C. App. 1, 5, 237 S.E.2d 259, 261 (1977) (clarifying distinction between actions against individual "health care providers," including "physicians and surgeons," and actions against accredited hospitals). I believe this statutory requirement may be satisfied in at least three ways. It is clear that the statute is satisfied where an expert witness testifies that he is familiar with

the standard of care in the community in question as a result of practicing in that community. It is also clear that the statute is satisfied where an expert witness testifies that he is familiar with the standard of care in the community in question as a result of practicing in a similar community. In addition, I believe the statute is satisfied where an expert witness testifies that he is familiar with the standard of care in the community in question as a result of the existence of, and his familiarity with, a standard of care for the treatment in question that is uniform across the country, and which does not vary depending upon the community.

This third approach to establishing the applicable standard of care in actions against individual health care providers may, at first blush, appear to be the equivalent of applying a national standard of care. And, as the majority aptly notes, it is clear that the legislature, in codifying the same or similar community approach in G.S. § 90-21.12, specifically intended not to adopt a national standard of care. However, I believe there is a crucial, albeit subtle, distinction between adopting a national standard of care as a matter of law, and allowing a party to present evidence of a national standard of care as a matter of fact. Without adopting a national standard of care as a matter of law, I believe G.S. § 90-21.12 permits the jury to consider factual evidence of the existence of a national standard of care in the process of determining the standard of care in the community in question.

This distinction was addressed in *Baynor v. Cook*, 125 N.C. App. 274, 480 S.E.2d 419 (1997), a medical malpractice action against individual doctors and their private partnerships. In *Baynor*, the plaintiff presented two expert witnesses who testified that there was a uniform standard of care across the country for the diagnosis and treatment of a thoracic aortic rupture (TAR), and that the defendant doctor, located in Beaufort County, had deviated from this standard of care. The defendants presented multiple expert witnesses who testified that they were familiar with the standard of care of an emergency room physician in Beaufort County, and that the defendant doctor had not deviated from this standard of care. *Id.* at 275-76, 480 S.E.2d at 420. At the close of the trial, the plaintiff requested the trial court to instruct the jurors that if they found a national standard of care existed for the diagnosis and treatment of TARs, they could hold the defendants to this national standard of care in determining whether the defendants had been negligent. *Id.* at 276, 480 S.E.2d at 420. The trial court denied this request and, instead, instructed the

jury on the standard of care as mandated by G.S. § 90-21.12 and set forth in the Pattern Jury Instructions for North Carolina. *Id.* On appeal the plaintiff argued that the trial court committed reversible error in denying her request for an instruction on the national standard of care. We concluded that the trial court's denial of the plaintiff's request was not error because North Carolina has not adopted a national standard of care as a matter of law. *Id.* However, we also noted that

> the jury heard testimony that the community standard in Beaufort County for the treatment of TARs is the same across the country. *The trial court properly allowed plaintiff's experts to testify that based on their familiarity with the national standard of care as related to a common medical issue (TARs), this standard of care did not vary depending on the community.*

*Id.* at 278, 480 S.E.2d at 421 (emphasis added).

These comments clarify that a plaintiff may satisfy G.S. § 90-21.12 by offering the testimony of an expert who asserts that (1) the standard of care for the treatment in question is uniform across the country and does not vary depending upon the community, and (2) he is familiar with this national standard. Such evidence is clearly some evidence of the standard of care in the community in question. When this type of evidence is offered by a plaintiff, I believe it should be presented to the jury for consideration, as it was in *Baynor*, and not excluded by the trial court. This comports with the language of the statute itself, which provides that a defendant in an action for medical malpractice shall not be liable "unless *the trier of the facts is satisfied by the greater weight of the evidence* that the care of such health care provider was not in accordance with" the applicable standard of care. G.S. § 90-21.12 (emphasis added). The statute expressly contemplates a determination by the jury, rather than the trial court, as to whether the greater weight of the evidence presented by the parties establishes a breach of the applicable standard of care.

Furthermore, admitting such evidence for consideration by the jury is not the same as adopting a national standard of care as a matter of law. If our State had adopted a national standard of care as a matter of law, the standard of care actually practiced in a defendant's community would be irrelevant to the legal analysis, even if that standard of care were lower than the national standard of care. Thus,

a local doctor could be found negligent even where his treatment conformed to the standard of care practiced among the doctors in his community. On the other hand, the same or similar community approach, which we have adopted in North Carolina, recognizes that there are often differences in the standards of care practiced in different communities. Under the same or similar community approach, these differences are relevant and central to the legal analysis because the jury must ultimately determine the applicable standard of care in each particular case. However, in making this determination, there is no reason why a jury should not be allowed to consider factual evidence of a national standard of care for the medical procedure in question.

Here, the named defendants are two individual doctors and their private partnership association. At trial, plaintiffs offered the expert medical testimony of Dr. Sunseet P. Chauhan. Dr. Chauhan had been deposed by defendants prior to trial. At the deposition, Dr. Chauhan testified that the only information he had about the medical community in which defendants practiced was the fact that it is located in the United States of America. He also testified that he had not undertaken a comparison of this community with any other community with which he was familiar. However, Dr. Chauhan testified that the standard of care in Wilmington, North Carolina in 1990 for the type of prenatal care at issue was the same as that in any other location in the United States, and that this standard did not vary depending upon the community.

Prior to trial, the court denied a motion by defendants to exclude the testimony of Dr. Chauhan based on his lack of familiarity with the local community in question. At trial, counsel for defendants noted that plaintiffs had not supplemented Dr. Chauhan's deposition testimony following the deposition, and therefore, pursuant to N.C.R. Civ. P. 26, requested that the trial court limit Dr. Chauhan's testimony to information contained in his deposition. The trial court indicated that it would rule on any objections to Dr. Chauhan's testimony as they were made during the trial.

Dr. Chauhan took the stand and testified before the jury that he is board certified in the areas of obstetrics, gynecology, and maternal-fetal medicine, with a speciality in high-risk pregnancy. He testified that he practices in Spartanburg, South Carolina, and teaches medical residents from the Medical University of South Carolina located in Charleston. Dr. Chauhan was admitted as an expert witness. The fol-

lowing questioning transpired during the direct examination of Dr. Chauhan:

Q. [A]re you familiar with the standard of care for board certified obstetricians/gynecologists practicing in Wilmington, North Carolina, or similar communities, in December of 1990?

A. Yes, sir.

MR. WALKER: Objection, deposition.

THE COURT: Okay. I'm going to sustain the objection.

. . .

Q. All right. In terms of 1990, do you have an opinion . . . as to whether or not the standards of practice for board certified physicians in Wilmington, or similar communities, in 1990 would have been the same in not only Wilmington but throughout North Carolina?

MR. WALKER: Objection. Deposition, if Your Honor please.

THE WITNESS: Yes, sir.

THE COURT: Sustained.

. . .

Q. Doctor, do you have an opinion . . . as to whether or not the standards of practice for board certified OB/GYN physicians practicing in Wilmington, North Carolina . . . would be the same as that of a board certified physician practicing at Duke or Chapel Hill, or anywhere in North Carolina in 1990?

MR. WALKER: Objection, if Your Honor please.

THE WITNESS: Yes.

MR. WALKER: Not only 26 but the deposition itself.

THE COURT: Overruled.

Q. Do you have such an opinion?

A. Yes, I do.

Q. What is that opinion?

MR. WALKER: Objection.

THE COURT: I'm going to sustain that.

**HENRY v. SOUTHEASTERN OB-GYN ASSOCS., P.A.**

[142 N.C. App. 561 (2001)]

Q. Doctor, would those standards be the same as the standards of board certified physicians practicing in Spartanburg or in Georgia in 1990?

MR. WALKER: Objection.

THE COURT: Overruled.

THE WITNESS: Yes, it would be. . . .

Q. Doctor, state whether or not the standards of practice for the board certified obstetricians/gynecologists in [Portsmouth Naval Hospital] would have been the same at Camp Lejeune in 1990, to the best of your knowledge?

MR. WALKER: Objection.

THE COURT: Overruled.

THE WITNESS: Yes, they would be.

. . .

Q. Based on your knowledge of those standards, would those standards, in your opinion, be applicable to Wilmington, North Carolina, in 1990?

MR. WALKER: Objection.

THE COURT: Sustained. He's already testified he doesn't know a thing about Wilmington.

The jury was then excused from the courtroom, and the trial court judge explained his perspective to the parties:

[H]ow can you compare an apple if the only thing you've looked at is oranges? I mean, from what I read in this deposition, this gentleman has never been to Wilmington, he'd never talked with anybody from Wilmington at the time of his deposition, that he didn't know anything about Wilmington at the time of the deposition, and then, subsequent to that, there's been no supplementation of his answers from the deposition as were requested or required. That's where I see the problem.

In the absence of the jury, Dr. Chauhan was called back to the stand for voir dire questioning, at which time the following testimony transpired:

Q. Dr. Chauhan, how can you say you're familiar with the standards of care in Wilmington or similar communities if you have not done a comparison with any communities that you're familiar with versus Wilmington?

. . .

A. The reason is, because the thing I found what was lacking in the care, or below the standard of care, is so fundamental it's applicable everywhere. . . . These are simple guidelines which everyone should follow across the country.

The trial court took the position that because Dr. Chauhan had testified during his deposition that he knew nothing about Wilmington, and because plaintiffs had not supplemented this testimony following the deposition, Dr. Chauhan could not testify as to his familiarity with the standard of care for board certified obstetricians and gynecologists practicing in Wilmington in 1990. I believe the exclusion of this testimony by the trial court was based upon a misunderstanding of the law, and constitutes reversible error. The applicable standard of care may be established by any of the three methods discussed above, and Dr. Chauhan was prepared to establish the applicable standard of care by testifying as to his familiarity with a national standard of care for prenatal treatment that does not vary depending on the community. An expert witness need not be familiar with the particular community in question. He need only be familiar with the applicable standard of care in that community. *See Warren v. Canal Industries*, 61 N.C. App. 211, 215-16, 300 S.E.2d 557, 560 (1983) (holding, in action against a private clinic and an individual doctor, that it is not necessary for the witness testifying as to the standard of care to have actually practiced in the same community as the defendant as long as the witness is familiar with the applicable standard of care). This principle was recently applied in *Marley v. Graper*, 135 N.C. App. 423, 521 S.E.2d 129 (1999), *cert. denied*, 351 N.C. 358, 542 S.E.2d 214 (2000). *Marley* involved a medical malpractice action against individual doctors. Therefore, although the concurring opinion is correct in noting that the cases cited in *Marley* for this proposition may have involved accredited hospitals, the holding in *Marley* itself is clear precedent for the application of this principle to actions against individual doctors. I do not believe that *Marley* can be distinguished simply on the grounds that it involved the testimony of a defendant's expert, rather than a plaintiff's expert. There is no logical reason to treat the testimony of a defendant's expert witness

differently than the testimony of a plaintiff's expert witness in terms of the type of evidence required by G.S. § 90-21.12 for establishing the applicable standard of care.

As the majority opinion points out, where an expert testifies regarding a uniform standard of care across the country, it is vital that he also specifically testify that he is familiar with the standard of care in the community in question or similar communities based on his assertion that the uniform standard is, in fact, the standard practiced in the community in question. See Tucker v. Meis, 127 N.C. App. 197, 487 S.E.2d 827 (1997) (holding that this requirement applies to cases in which an expert bases his opinion upon either a purported state-wide standard of care or a purported national standard of care); Howard v. Piver, 53 N.C. App. 46, 52, 279 S.E.2d 876, 880 (1981). In Tucker, we described this necessary element as "the statutorily required connection" between a purported uniform or state-wide standard of care and the same or similar community rule mandated by G.S. § 90-21.12. Id. at 198-99, 487 S.E.2d at 829. However, I disagree with the assertion that Dr. Chauhan "failed to testify in any instance that he was familiar with the standard of care in Wilmington or similar communities." Dr. Chauhan testified during his deposition that he was familiar with the applicable standard of care in Wilmington in 1990. His testimony was based on his assertion that the standard of care for prenatal treatment in Wilmington, North Carolina in 1990 was the same as that in any other location in the United States, and that he was familiar with this uniform standard. This is precisely the "statutorily required connection" discussed in Tucker. In my view, the only reason this testimony was not admitted at trial is because the trial court incorrectly ruled that Dr. Chauhan's deposition testimony precluded him from testifying at trial as to his familiarity with the standard of care for prenatal treatment in Wilmington in 1990.

Because plaintiffs could not establish the applicable standard of care without the excluded testimony of Dr. Chauhan, the trial court granted defendants' motion for directed verdict at the close of plaintiffs' evidence. I believe this constitutes reversible error as well. Had Dr. Chauhan's testimony been admitted at trial, as I believe it should have been, defendants would not have had grounds for a directed verdict in their favor. In considering a motion for directed verdict, the question presented is whether the evidence, viewed in the light most favorable to the non-movant, is sufficient to submit the case to the jury. Clark v. Perry, 114 N.C. App. 297, 304, 442 S.E.2d 57, 61 (1994). Where an expert testifies that the standard of care for a particular

type of treatment is uniform across the country and does not vary depending on the community, and further testifies that he is familiar with this uniform standard of care, such testimony is admissible and should be considered by the jury. *See Baynor*, 125 N.C. App. at 278, 480 S.E.2d at 421. This is especially the case where the nature of the treatment in question is relatively simple. *See Wiggins v. Piver*, 276 N.C. 134, 138, 171 S.E.2d 393, 395-96 (1970); *Howard*, 53 N.C. App. at 51-52, 279 S.E.2d at 880. In the instant case, Dr. Chauhan's testimony indicated that the alleged negligence by defendants included the failure to undertake certain medical procedures that are considered basic and fundamental in the area of prenatal treatment.

For the reasons stated herein I respectfully dissent. I would reverse the trial court's order granting defendants' motion for a directed verdict. I would remand for a new trial, and hold that Dr. Chauhan's testimony as to his familiarity with the standard of care for prenatal treatment in Wilmington in 1990 is admissible at trial.