McCULLOUGH, Judge.
Plaintiffs appeal from the trial court's decision to grant defendant's motion for a directed verdict and its denial of plaintiffs' motion for a new trial.
Brian Navarro Perez ("Brian") was born on 29 December 1999 to plaintiffs Demetrio Navarro Ramirez ("Demetrio") and Maria Navarro Ramirez ("Maria"). During the early afternoon of 24 February 2000, Brian became ill and stopped eating and drinking. He also had symptoms of nausea and diarrhea. Plaintiffs took Brian to Randleman Medical Clinic. Dr. Stuart Kossover examined Brian and concluded that he was suffering from a viral condition. Dr. Kossover told plaintiffs that this was nothing serious, and he prescribed Amoxycillin, an antibiotic.
Dr. Kossover told plaintiffs how to administer the drug, and they gave Brian a second dose at approximately 9:30 p.m. Brian's condition did not improve, and he vomited at least eight times during the night.
At about 5:00 a.m., Demetrio checked on his son and noticed that he was running a temperature. He took Brian back to the medical center at 8:30 a.m. Demetrio waited outside until the clinic opened at 9:00 a.m. At about 10:00 a.m., a nurse escorted Demetrio and Brian to an examination room.
Defendant Dr. James C. Little examined Brian's ears, nose, throat, and eyes and determined that Brian was "fine." Defendant then left the room and instructed a nurse to administer an injection of Rocephin. Following defendant's instructions, the nurse gave the injection and told Demetrio, in Spanish, that Brian had a minor stomach infection.
When the nurse injected the Rocephin, Brian began to convulse involuntarily. Demetrio asked the nurse what was wrong, and the nurse responded that this was a natural reaction to the medication. She also told Demetrio to purchase some Pedialyte for Brian's dehydration. Brian's convulsions never stopped after he received the injection. While Demetrio was paying the bill, Brian appeared to be turning gray. Demetrio found a nurse and begged her for help. The nurse explained that nothing was wrong and that Demetrio should call back after taking Brian home.
On the way home, Demetrio purchased some Pedialyte. The family arrived at home approximately 15-20 minutes after leaving the medical center. Demetrio noticed that Brian's lips changed to a blackish color. Shortly thereafter, Demetrio received a phone call from a nurse at the medical center. Demetrio told the nurse that Brian looked terrible, was having trouble breathing, and was dying. The nurse told Demetrio that the baby was having a normal reaction to the medicine. She also suggested giving the baby some Tylenol.
While the nurse was still on the phone, Demetrio tried to give Brian the medicine the nurse recommended. However, Brian's mouth was clenched shut. Demetrio tried to open Brian's mouth, but he was unable to do so. In desperation, Demetrio held the phone to Brian's mouth to prove to the nurse that Brian was having difficulty breathing. Demetrio demanded to know what injection Brian received. The nurse refused to answer the question, but told Demetrio to return to the hospital immediately with Brian.
Demetrio, Maria, and Brian returned to the hospital. When they arrived, the nurse and defendant were in the doorway waiting for them. Defendant took Brian into an examination room and noticed greenish brown fluid coming from the baby's mouth and nose. Brian was barely breathing and had no heart tones. A nurse tried to force the parents out of the room, but Demetrio refused to leave. Defendant began performing mouth-to-mouth resuscitation, but was unsuccessful.
An ambulance came from Randolph County Emergency Medical Services. Emergency personnel placed Brian into an ambulance and arrived at Randolph Memorial Hospital at 11:45 a.m. Brian was declared dead on arrival.
At trial, Dr. Peter Curtis testified for plaintiffs. At the close of plaintiffs' evidence, defendant moved for a directed verdict because plaintiffs failed to elicit specific testimony from Dr. Curtis indicating that he was familiar with the standard of care applicable to health care providers in Randolph County, North Carolina. The trial court granted that motion.
On 14 November 2002, plaintiffs filed a motion for a new trial. The trial court denied that request. Plaintiffs appeal.
On appeal, plaintiffs argue that the trial court erred by (1) granting defendant's motion for a directed verdict and (2) denying plaintiffs' motion for a new trial. We disagree and affirm the decision of the trial court.
I. Motion for a Directed Verdict
Plaintiffs argue that the trial court erred in granting defendant's motion for a directed verdict. The issue is whether plaintiffs' witness, Dr. Peter Curtis, testified that he was familiar with the appropriate standard of care and whether there was a violation of that standard. N.C. Gen. Stat. § 90-21.12 (2003) (emphasis added) addresses the standard of care in medical malpractice actions:
In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.
The purpose of this rule is "to avoid the adoption of a national or regional standard of care for health providers[.]" Page v. Hospital, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980).
Our appellate courts have considered how medical experts must testify regarding their knowledge of the standard of care. See Tucker v. Meis, 127 N.C. App. 197, 487 S.E.2d 827 (1997). In Tucker, the alleged malpractice occurred in Winston-Salem, North Carolina. Id. at 197, 487 S.E.2d at 828. At trial, plaintiffs' expert witness testified that he was familiar with the standard of care in North Carolina, rather than Winston-Salem or another community. Id. at 198, 487 S.E.2d at 828. In affirming the trial court's order granting summary judgment for defendants, this Court noted:
After reviewing Dr. Tasker's testimony in its entirety, we find that the record indicates he failed to testify in any instance that he was familiar with the standard of care in Winston-Salem or similar communities. Although Dr. Tasker testified that he was familiar with the standard of care in North Carolina, he failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community.
Id. at 198, 487 S.E.2d at 829 (emphasis added).
In the present case, we have reviewed the transcript in its entirety. Although Dr. Curtis testified that there had been a "deviation from the standard of care," this fleeting reference is not sufficient to comply with the mandate of N.C. Gen. Stat. § 90-21.12. Simply put, Dr. Curtis never related the term "standard of care" to the standards of practice that apply to family physicians in Randleman, North Carolina, or similar communities in February of 2000. Based on our decision in Tucker, we conclude that the trial court acted appropriately in granting defendant's motion for a directed verdict. We overrule this assignment of error.
II. Plaintiffs' Motion for a New Trial
Plaintiffs argue that the trial court erred by failing to grant their motion for a new trial. N.C. Gen. Stat. § 1A-1, Rule 59(a) (2003) provides various grounds for granting a new trial. However, the trial court has broad discretion in determining whether a motion for a new trial should be granted:
It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.
Worthington v. Bynum, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). Our courts have "evinced a positive hesitancy to review such discretionary rulings by the trial court except in rare cases[.]" Id.
In the present case, plaintiffs argue that they are entitled to a new trial because the trial court erroneously granted defendant's motion for a directed verdict. However, we have already determined that the trial court acted appropriately with regard to this issue. Therefore, the trial court did not abuse its discretion in denying the motion for a new trial. We dismiss this assignment of error.
After careful consideration of the record, briefs, and transcript, we conclude that the trial court acted appropriately in granting defendant's motion for a directed verdict and denying plaintiffs' motion for a new trial. The decision is therefore
Affirmed.
Judges McGEE and ELMORE concur.
Report per Rule 30(e).