JOSEPH E. WARREN, SR., ADMINISTRATOR FOR THE ESTATE OF JOE E. WARREN, JR. v. CANAL INDUSTRIES, INC., KENNETH CAMPBELL, SAMPSON COUNTY MEMORIAL HOSPITAL, INC., MAVIS McLAMB, R.N., CLINTON SURGICAL CLINIC, P.A., AND BRUCE F. CALDWELL, M.D.

No. 824SC375

(Filed 15 March 1983)

1. **Physicians, Surgeons, and Allied Professions §§ 15.1, 17— malpractice action—competency of expert testimony—departing from standard of care**

In a wrongful death action based on alleged negligent treatment by defendant surgeon, the trial court erred in refusing to permit plaintiff's witness, who had been accepted by the trial court as an expert in general medicine and surgery, to answer a hypothetical question in which he was asked to state an opinion as to whether defendant surgeon's installation of a central venous pressure line catheter in decedent's chest and his monitoring thereof met the standard of care for general surgeons in communities similar to the county of treatment where the witness was familiar with central venous pressure line procedures in communities similar to the community in which decedent was treated as they existed at the time of such treatment, and the witness was properly asked to assume the necessary facts to allow him to state his opinion. Furthermore, plaintiff's evidence would have been sufficient for the jury had the witness been permitted to state his opinion where the record shows that the witness would have testified that he was of the opinion that defendant failed to comply with the standard in that he failed to check the position of the catheter as soon as possible after installing it by ordering an x-ray, failed to give appropriate orders for the care of the patient while the central venous pressure line was in place, and failed to leave instructions that he be notified by the intensive care nurses should any irregularities occur during his absence, and where there was other evidence that decedent's death resulted from a cardiac tamponade caused by the infusion of a large quantity of fluid into the pericardial sac through a hole in the right atrium caused by a catheter and that perforation of the atrium wall by a central venous pressure line catheter is a medically recognized, but uncommon, complication in the use of the pressure line. G.S. 90-21.12.

2. **Physicians, Surgeons, and Allied Professions § 11; Torts § 7.5— release of original tort-feasors—malpractice in treating injuries—wrongful death action not barred.**

A release of the original tort-feasors who caused injuries to decedent did not bar a wrongful death action against a physician or surgeon based on negligent treatment of the injuries caused by the original tort-feasors. G.S. 1B-4.

APPEAL by plaintiff from *Lane, Judge.* Judgment entered 20 November 1981 in Superior Court, SAMPSON County. Heard in the Court of Appeals 16 February 1983.

Plaintiff, Joseph E. Warren, Sr., brought this wrongful death action as administrator of the estate of Joe E. Warren, Jr., the decedent. The original tort-feasors, Canal Industries, Inc. and Kenneth Campbell, and plaintiff reached a settlement and plaintiff executed a complete release of the original tort-feasors, expressly reserving his rights to proceed against the remaining (medical) defendants. Thereafter, plaintiff voluntarily dismissed his claims against Canal Industries, Inc., defendant Campbell, Sampson County Memorial Hospital, Inc., and Mavis McLamb, R.N.

The medical defendants moved for summary judgment, arguing that by releasing the original tort-feasors plaintiff had, as a matter of law, lost his right to pursue the medical defendants for damages in wrongful death based on a theory of negligent treatment. Judge Lane denied defendants' motion for summary judgment.

When the case came on for trial, the remaining defendants were Clinton Surgical Clinic, P.A. and Dr. Bruce F. Caldwell, an agent of Clinton Surgical Clinic and the surgeon who cared for decedent. Plaintiff proceeded to trial upon a theory of negligence, seeking to show that Dr. Caldwell and the Surgical Clinic were severally liable because Dr. Caldwell's negligence in treating the decedent was a cause of the decedent's death.

Plaintiff's evidence tended to show the following events and circumstances. Joe, Jr. was seriously injured in a motorbike accident on the property of Canal Industries, Inc. Following Joe's injury, he was hospitalized at Sampson County Memorial Hospital under the care of Dr. Bruce Caldwell, a surgeon.

Dr. Caldwell, a board certified surgeon, has been practicing general surgery in Clinton, North Carolina since 1968. After performing surgery on Joe, Jr. to repair a damaged liver, Dr. Caldwell installed a central venous pressure line (CVP line) to monitor Joe, Jr.'s hemodynamic status. He installed the CVP line by inserting, through the chest wall, a catheter into a vein leading from the heart and through the vein toward the heart, hoping to locate the tip of the catheter at a point just above the opening of the right atrium. He did not order that an x-ray be taken to verify the location of the tip of the catheter. After installation of the CVP line, Joe, Jr. was put in the intensive care unit of the hospital, under the care of intensive care nurses. Dr.

Caldwell left instructions to monitor Joe, Jr.'s hemodynamic status, but gave no specific instructions as to whether or when he should be contacted if changes in Joe's condition occurred. During the night, Joe, Jr. experienced pain and difficulty breathing, sat up in bed, and complained to nurse McLamb. She called Dr. Caldwell and while they were discussing Joe's symptoms, he died.

At the close of plaintiff's evidence, the trial judge granted defendants' motion for directed verdict. Plaintiff appealed.

*Holland, Poole & Newman, P.A., by B. L. Poole, and Blanchard, Tucker, Twiggs, Denson & Earls, P.A., by Irvin B. Tucker, Jr., for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson and Robin K. Vinson, for defendant-appellees.*

WELLS, Judge.

[1] By his assignments of error, plaintiff contends that the trial judge erred in sustaining defendants' objection to a hypothetical question asked to plaintiff's expert medical witness and that, had the witness been allowed to answer the question, plaintiff would have presented sufficient evidence of Dr. Caldwell's negligence to avoid a directed verdict and have his case submitted to the jury. We agree and reverse.

On review of a directed verdict, appellate review is usually limited to those grounds asserted by the movant upon making his motion before the trial judge. *See* G.S. 1A-1, Rule 50(a); *and Feibus v. Construction Co.*, 301 N.C. 294, 271 S.E. 2d 385 (1980). The grounds asserted by defendants in the present case are not included in the record or the transcript filed, but it is apparent from the trial judge's response to defendants' motion and from the briefs of the parties that Judge Lane granted defendants' motion for directed verdict on the ground that plaintiff had failed to present sufficient evidence to allow the jury to find that Dr. Caldwell was negligent in his treatment of Joe, Jr.

Dr. John D. Butts of the office of the Chief Medical Examiner performed an autopsy on Joe. Dr. Butts was of the opinion that Joe's death was due to heart failure; that the heart failure was in

the form of a cardiac tamponade; and that it was caused by the infusion of a large quantity of fluid into the pericardial sac. Dr. Butts further was of the opinion that the fluid entered the pericardial sac through a hole in the right atrium which was caused by a catheter. Dr. Butts explained that such perforation of the atrium wall by a CVP catheter is a medically recognized, but uncommon, complication in the use of CVP lines.

Plaintiff called Dr. Harold W. Glascock, Jr. as a witness. Dr. Glascock testified as to his training and background in medicine, surgery and medical administration. He was tendered as an expert in general medicine and surgery, and upon defendants' request a *voir dire* was conducted. On *voir dire*, Dr. Glascock testified that he was familiar with CVP catheter procedures because between 1973 and 1978 he had inserted several and had supervised others learning the procedures. The trial judge accepted Dr. Glascock as an expert in general medicine and surgery.

Direct examination resumed and Dr. Glascock testified that he had experience in general surgery, and in medical administration and training. He testified that he was familiar with CVP procedures, and that between 1973 and 1978 he had personally installed CVP lines and had trained others in the installation of CVP lines. Dr. Glascock testified that he had patients in Franklin and Halifax Counties; that Franklin and Halifax Counties, like Sampson County, are rural, agricultural counties with several small towns and one hospital; that between 1973 and 1978, as director of admissions for Dix Hospital, he was required to review the case histories of all patients admitted to Dix and that Sampson County is one of the twenty counties from which Dix receives patients; and that he was familiar with the standards of care for physicians and surgeons in communities similar to Sampson County.

Counsel for plaintiff posed a hypothetical question to Dr. Glascock in which the witness was asked whether he had an opinion as to whether Dr. Caldwell's installation and monitoring of the CVP line was in accordance with the standard of care for general surgeons in communities similar to Sampson County. Upon defendants' objection, Dr. Glascock was *not allowed to answer this*

hypothetical question.[1] Plaintiff's offer of proof tended to show that Dr. Glascock did have an opinion as to whether defendant Dr. Caldwell had complied with the applicable standard of care and that he was of the opinion that Dr. Caldwell failed to comply with the standard in that he failed to check the position of the catheter as soon as possible after installing it by ordering an x-ray; failed to give appropriate orders for the care of the patient while the CVP line was in place; and failed to leave instructions that he be notified by the intensive care nurses should any irregularities occur during his absence.

The import of this excluded evidence is twofold. First, it is direct evidence of what the standard of care was in communities similar to Sampson County at the time of defendants' treatment of the decedent, and second, it is opinion evidence that the treatment rendered by Dr. Caldwell (as portrayed by plaintiff's version of the evidence recited in the assumed facts embodied in the hypothetical question) was not in accordance with that standard of care.

In medical malpractice cases, G.S. 90-21.12 requires that, in order to be entitled to recover, the plaintiff must show that the defendant physician provided the plaintiff with a level of care "not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." G.S. 90-21.12. Generally, expert testimony is necessary to establish this standard of care. *See Tripp v. Pate,* 49 N.C. App. 329, 271 S.E. 2d 407 (1980). It is not necessary for the witness testifying as to the

---

1. We note that the legislature, by enacting G.S. 8-58.12 has eliminated the requirement that expert opinion testimony be in response to hypothetical questions. Nevertheless, hypothetical questions may still be used, and in instances such as the present case where there had been no foundation laid to show that the witness is familiar with the facts pertaining to the case being tried, *i.e.,* by having been present during the defendant doctor's treatment of the patient, or having reviewed the patient's files, or having listened to the testimony of earlier witnesses as to what treatment the patient received, hypothetical questions may yet be required. *See generally,* Brandis on N.C. Evidence §§ 136 and 137 (1982). We further note that in the particular question posed to Dr. Glascock he was asked to assume facts elicited in the previous testimony of Dr. Caldwell, Dr. Butts, and Nurse McLamb and that the question was sufficient to lay this part of the foundation required to render him competent to give his opinion.

standard of care to have actually practiced in the same community as the defendant as long as the witness is familiar with the standard. *See Simons v. Georgiade,* 55 N.C. App. 483, 286 S.E. 2d 596, *disc. rev. denied,* 305 N.C. 587, 292 S.E. 2d 571 (1982) and cases cited therein. Moreover, as long as the witness is shown to be familiar with the applicable standard of care, the fact that the question asked to the witness does not track the language of G.S. 90-21.12 does not necessarily render the answer inadmissible. *Id.*

When the hypothetical question was posed to Dr. Glascock, he had been accepted by the trial court as an expert in general medicine and surgery. He was familiar with CVP procedures in communities similar to the community in which the decedent was treated, as they existed at the time of the decedent's treatment, and he knew what the standard of care was. While it was not clear that Dr. Glascock was personally familiar with what treatment was rendered the decedent by Dr. Caldwell, he was properly asked to assume the necessary facts and those assumed facts were sufficient to allow him to give his opinion. A physician's opinion need not be based on personal knowledge or observation, but may be based on reliable information supplied to him by others. *See Ingram v. McCuiston,* 261 N.C. 392, 134 S.E. 2d 705 (1964); *and* 1 Brandis on N.C. Evidence § 136 (1982). An expert may give his opinion and his reasons therefore without prior disclosure of the underlying facts or data, absent a request from the opposing party. G.S. 8-58.14. Under these circumstances, it was error to sustain defendants' objection to the question posed to Dr. Glascock.

We are persuaded that had the trial court allowed Dr. Glascock to give his testimony as to the appropriate standard of care for Joe, Jr. and its violation by Dr. Caldwell, directed verdict for Dr. Caldwell and his professional association would have been clearly improper. Dr. Caldwell, himself, testified that the use of x-rays in CVP procedures constituted "optimal" care; that in determining how much of the tube to insert he used " 'old Kentucky windage'—I guess you might say you kind of see where the heart is and where you're putting it in and how long the catheter is and say 'Well, we need about that much;' " that he was aware that perforation of the atrium by the catheter tip was a recognized complication of the procedure; and that although he left instructions to monitor Joe, Jr., he left no instructions as to what

signs hospital personnel should look for to determine when to contact him. Such evidence, taken together with the autopsy evidence establishing the cause of death and Dr. Glascock's excluded testimony, would allow, but not require the jury to find that Dr. Caldwell was negligent in his treatment of Joe, Jr. and that such negligence was the proximate cause of Joe, Jr.'s death.

[2] By cross assignment of error, defendants contend that the trial judge erred in denying their motion for summary judgment based on plaintiff's release of the original tort-feasors. Citing G.S. 1-540.1 and *Simmons v. Wilder*, 6 N.C. App. 179, 169 S.E. 2d 480 (1969), defendants contend that plaintiff is barred from pursuing a wrongful death action against physicians, surgeons or other professional practitioners negligently treating an injury caused by a prior tort-feasor who has been released. *Simmons v. Wilder* is clear that while G.S. 1-540.1 allows an injured plaintiff to seek to recover damages from a medical defendant for *personal injury* resulting from the negligent treatment of an injury inflicted by an original tort-feasor who has been released, it does not allow a plaintiff releasing the original tort-feasor from liability in *wrongful death* to then seek to recover in wrongful death from the subsequent medical tort-feasor. Defendants have overlooked that the Court in *Simmons v. Wilder* noted that G.S. 1B-4, which had not yet become effective, would have changed the result in that case.

G.S. 1B-4 applies to the facts of the present case and it provides:

§ 1B-4. *Release or covenant not to sue.—*

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

The original tort-feasors released by plaintiff and the remaining medical defendants are "persons liable in tort for the same . . . wrongful death." The express terms of plaintiff's release reserved his right of action against the remaining defendants. Plaintiff was entitled to seek recovery from the remaining defendants, subject to a reduction as set out in G.S. 1B-4 and Judge Lane correctly denied defendants' motion for summary judgment. Defendants' cross assignment of error is overruled.

For error in the exclusion of expert testimony offered by plaintiff, there must be a

New trial.

Judges HILL and JOHNSON concur.