KYLE AND WENDY HANSER, Plaintiffs,
v.
CHRISTOPHER B. STONEHOUSE AND WIFE NANCY STONEHOUSE; AND FORSYTH REALTY CONSULTANTS, d/b/a RE/MAX REALTY AND VILLAGE OF CLEMMONS, Defendants.
No. COA09-1142.
Court of Appeals of North Carolina.
Filed March 16, 2010.
This case not for publication
Spilman, Thomas & Battle, PLLC, by Nathan B. Atkinson and Edward T. Shipley, III, for plaintiffs-appellants.
David E. Shives, PLLC, by David E. Shives, for defendants-appellees Christopher and Nancy Stonehouse.
Sharpless & Stavola, P.A., by Eugene E. Lester III, for defendants-appellees Nancy Stonehouse and Forsyth Realty Consultants d/b/a RE/MAX Realty.
ROBERT C. HUNTER, Judge.
Plaintiffs Kyle and Wendy Hanser appeal from the trial court's order granting summary judgment to defendants Christopher and Nancy Stonehouse and RE/MAX Realty. After careful review, we conclude that summary judgment was properly entered in this case.

Facts
On 20 November 2007, the Hansers entered into a contract to purchase the Stonehouses' residential property in the Village of Clemmons, in Forsyth County, North Carolina. In addition to owning the property, Mrs. Stonehouse was the listing agent, and her employer, RE/MAX, was the selling agent. The purchase contract included a residential property disclosure statement, in which the Stonehouses indicated that they did not know of any flood hazards or any drainage, grading, or soil stability problems with respect to the property. After executing the purchase contract but before closing, Mr. Hanser and Mr. Stonehouse had a conversation about a rock-lined depression on the property. Mr. Stonehouse told Mr. Hanser that there were no drainage problems and that the Stonehouses had never experienced any drainage problems in connection with the rock-lined depression. Closing occurred on 18 December 2006.
Heavy rain fell in Forsyth County during the night of 31 December 2006 and morning of 1 January 2007. The stormwater from the surrounding vicinity drained across the Hansers' property, backed up from an obstructed drainage inlet adjacent to the property, which is maintained by the Village, filled the rock-lined depression on the property, spread across the Hansers' driveway, and entered the house's garage and basement. The water, which was 15 inches deep in some places, destroyed personal property and damaged the basement and garage.
On 28 November 2007 the Hansers filed a complaint, asserting a claim against the Village for negligently maintaining the drainage inlet and a claim against the Stonehouses and RE/MAX for fraudulently or negligently misrepresenting the condition of the property. RE/MAX filed an answer generally denying the Hansers' claim, moving to dismiss their complaint for failure to state a claim for relief, and asserting a cross-claim against the Village for indemnity or contribution. The Stonehouses also filed an answer denying the Hansers' claim, moving to dismiss the complaint, and cross-claiming against the Village for indemnity or contribution. The Village, in turn, filed an answer denying the Hansers' claim, denying RE/MAX's and the Stonehouses' cross-claims, and asserting a cross-claim against the Stonehouses for indemnity or contribution. The Stonehouses, RE/MAX, and the Village subsequently filed a joint stipulation voluntarily dismissing all of their cross-claims without prejudice.
On 18 December 2007 the Hansers and the Village executed a settlement agreement and general release. The settlement and release provides that, in exchange for $5,000.00 and repair of the drainage inlet, the Hansers would release the Village from "any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever" resulting from the flood of the Hansers' property on 31 December 2006. The settlement and release also expressly reserves the Hansers' claims against "the remaining defendants in the Lawsuit." The remaining defendants  the Stonehouses and RE/MAX  subsequently filed motions to amend their answers, alleging that the settlement and release barred the Hansers from pursuing their claims against them.
On 26 February 2009, the Hansers filed a motion to amend their complaint to include a claim for unfair and deceptive trade practices against RE/MAX and Mrs. Stonehouse. Prior to a hearing on the Hansers' motion to amend their complaint, the remaining defendants filed motions for summary judgment. After conducted a hearing on the parties' motions on 13 April 2009, the trial court entered an order on 16 April 2009 allowing the Hansers' motion to amend their complaint. When the Hansers were notified that the trial court intended to grant the remaining defendants' motions for summary judgment, they filed a motion for reconsideration. In an order entered 23 April 2009, the trial court granted the remaining defendants' motions for summary judgment and denied the Hansers' motion for reconsideration. The Hansers timely appealed to this Court.

I
The Hansers first argue that summary judgment was improperly granted in this case. An appellate court "review[s] a trial court's order granting or denying summary judgment de novo." Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c); Summey v. Barker, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). For summary judgment purposes, a factual issue is "material" if it "would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." Koontz v. City of Winston-Salem, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). The moving party has the burden of demonstrating the lack of any genuine issue of material fact and entitlement to judgment as a matter of law. Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). To that end, the evidence produced by the parties is viewed in the light most favorable to the non-moving party. Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).
When the moving party, through its forecast of evidence, satisfies its burden of establishing that there are no disputed issues of material fact for trial and that the moving party is entitled to judgment as a matter of law, "the burden shifts to the non-moving party to `set forth specific facts showing that there is a genuine issue for trial.'" Lowe v. Bradford, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982) (quoting N.C. R. Civ. P. 56(e)) (emphasis omitted). The non-moving party "must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case." Econo-Travel Motor Hotel Corp. v. Taylor, 301 N.C. 200, 204, 271 S.E.2d 54, 57 (1980).
The Hansers argue that the trial court erred in granting summary judgment based on the settlement and release between the Hansers and the Village. Relying on N.C. Gen. Stat. § 1B-4 (2009), the Hansers contend that the Stonehouses and RE/MAX are not joint tortfeasors with the Village and, therefore, they cannot benefit from the Hansers' settlement and release with the Village.
The "Uniform Contribution among Tort-Feasors Act," N.C. Gen. Stat. §§ 1B-1 through -6 (2009) ("the Act"), provides in relevant part:
When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater[.]
N.C. Gen. Stat. § 1B-4(1); accord Best v. Ford Motor Co., 148 N.C. App. 42, 45, 557 S.E.2d 163, 165 (2001) ("Under [N.C. Gen. Stat. § 1B-4], a release or covenant not to sue that is given in good faith to one or more persons liable for the same injury does not discharge other tortfeasors, unless otherwise provided."), aff'd per curiam, 355 N.C. 486, 562 S.E.2d 419 (2002).
Joint tortfeasors are defined as two or more persons (1) "who act in concert in committing a wrong which results in injury to person or damage to property" or (2) "who commit separate wrongs without concert of action or unity of purpose, when the acts are concurrent as to place and time and unite in setting in operation a single destructive and dangerous force which produces a single and indivisible injury." Bost v. Metcalfe, 219 N.C. 607, 610, 14 S.E.2d 648, 651 (1941); accord Bowen v. Insurance Co., 270 N.C. 486, 491-92, 155 S.E.2d 238, 242-43 (1967) ("In the case of joint tort-feasors, although there is a single damage done, there are several wrongdoers[;] [t]he act inflicting injury may be single, but back of that, and essential to liability, lies some wrong done by each tort-feasor contributing in some way to the wrong complained of."). In determining whether persons are joint tortfeasors, the "focus" is whether the injury is indivisible, "render[ing] apportionment of damages among the individual tortfeasors impossible." Ipock v. Gilmore, 73 N.C. App. 182, 186, 326 S.E.2d 271, 275 (1985).
Here, neither the Hansers nor the remaining defendants claim that they acted in concert with the Village in causing the Hansers' property damage. Rather, the parties' dispute focuses on whether the Village, in negligently maintaining the drainage inlet, and the remaining defendants, in misrepresenting the condition of the property, caused a "single injury."
In their complaint, the Hansers describe a single, indivisible injury  the flooding of their property:
On the evening of December 31, 2006 heavy rain fell across Forsyth County. On the morning of January 1, 2007 Plaintiffs discovered that water had entered and covered the entire garage and basement in some places up to 15 inches in depth. The water came from storm water that drained from the surrounding neighborhood, drained across the Premises, subsequently backed up from the stormwater drainage inlet, filled the rock lined depression, spread across the Plaintiffs' driveway, and then entered into the garage and basement.
See Cox v. Robert C. Rhein Interest, Inc., 100 N.C. App. 584, 587, 397 S.E.2d 358, 360 (1990) (concluding upstream developers were joint tortfeasors causing a "single indivisible injury  the flooding of plaintiffs' property" where mud and silt from developers' sites flooded plaintiffs' property and damaged storage shed).
The Hansers argue on appeal that they suffered different injuries based on the different tortious acts of the Village and the remaining defendants. As plaintiff's counsel implicitly recognized during the summary judgment hearing, however, the Village's and the remaining defendants' actions culminated in causing the flood: "But Judge, we are talking about two wholly different claims, a negligence action against The Village of Clemmons, and then a claim for lying about the problems that existed with that drain, against the Stonehouses and RE/MAX." (Emphasis added.) Despite the fact that the Village and the remaining defendants "may have been guilty of separate wrongdoing," Chemimetals Processing, Inc. v. Schrimsher, 140 N.C. App. 135, 139, 535 S.E.2d 594, 596 (2000), all of their complained-of actions relate to "that drain." (Emphasis added.) We conclude, therefore, that the Stonehouses and RE/MAX are joint tortfeasors with the Village in causing the Hansers' flood damage.
The Hansers argue that even if the remaining defendants are joint tortfeasors with the Village, the settlement and release "only applied to [the Village] under N.C.G.S. § 1B-4." Releases are contractual in nature and their interpretation is governed by the same principles applicable to interpreting contracts. Chemimetals Processing, 140 N.C. App. at 138, 535 S.E.2d at 596. The scope and extent of a release is governed by the intention of the parties, which is ascertained from the language, subject matter, and purpose of the release. Id.
It is undisputed that the language in the settlement and release provides that the Hansers release the Village "from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever" resulting from the flood of the Hansers' property on 31 December 2006. With respect to the Stonehouses and RE/MAX, the settlement and release states that "[n]othing contained in this Settlement Agreement and General Release of all claims shall be construed as a release or settlement of any and all claims [the Hansers] have, or may have, against the remaining defendants in the Lawsuit." Based on the explicit language in the settlement and release, it excludes the Stonehouses and RE/MAX from the scope of the release of claims arising from the flood damage of the Hansers' property. See Warren v. Canal Industries, 61 N.C. App. 211, 218, 300 S.E.2d 557, 561 (1983) (holding express terms of plaintiff's release of original tortfeasors in negligent treatment action reserved his right of action against remaining medical defendants for wrongful death).
Moreover, in their brief, the Stonehouses and RE/MAX state that they "do not dispute the limiting language of the Hansers' release . . . ." Rather, they contend that, "[a]s provided in the settlement, the Hansers received money damages and repairs, which was the remedy they sought in their complaint for their alleged injury." Thus, the remaining defendants contend, summary judgment was properly granted in their favor in order to prevent the Hansers from obtaining a "double recovery."
"For an injury by joint tort-feasors there is a single cause of action for all damages and there may be only one recovery and satisfaction." Simpson v. Plyler, 258 N.C. 390, 393, 128 S.E.2d 843, 845 (1963). Thus, although a party is "entitled to full recovery for its damages," a party is "not entitled to a `double recovery' for the same loss or injury." Chemimetals Processing, 140 N.C. App. at 138, 535 S.E.2d at 596 (quoting Markham v. Nationwide Mut. Fire Ins. Co., 125 N.C. App. 443, 455, 481 S.E.2d 349, 357, disc. review denied, 346 N.C. 281, 487 S.E.2d 551 (1997)).
The only forecast of evidence presented on summary judgment was the Hansers' complaint and the settlement and release with an attached exhibit showing the Village's proposed improvement to the drainage inlet. In their complaint, the Hansers sought compensation from the Stonehouses and RE/MAX for "their personal property destroyed due to the stormwater flooding, the cost to repair the garage and basement following the stormwater flooding, and to correct the stormwater drainage issue on the Premises." Similarly, the Hansers sought damages from the Village "encompass[ing] loss of personal property, cost to repair the premises and costs to remedy the drainage issue." The settlement and release provides that in consideration of releasing their claim against the Village, the Hansers received "FIVE THOUSAND and 00/100 Dollars ($5,000.00), AND CONSTRUCTION OF AN IMPROVEMENT TO A STORMWATER INLET . . . ."
Under the terms of the settlement and release, the Hansers received money compensating them for the damage to their personal property and real property. The settlement and release also requires the Village to fix the drainage inlet. Based on the evidence submitted to the trial court on summary judgment, we conclude that the Stonehouses and RE/MAX, as the moving parties, met their burden on summary judgment of establishing that the Hansers were compensated for the damage caused by the flooding of their property. Thus, under N.C. R. Civ. P. 56(e), the burden shifted to the Hansers to "set forth specific facts showing that there is a genuine issue for trial."
The Hansers argue on appeal, as they did on summary judgment, that the $5,000.00 and improvement to the drainage inlet does not fully compensate them because the value of the property is diminished by the uncertainty as to whether the repairs will alleviate future drainage issues on the property:
Judge, we're going to put on evidence at trial that there's a diminution in value to the property even if the flooding has in fact been fixed. We don't know if it has been fixed. There's going to be testimony from engineers that are going to testify whether or not it's been fixed, I imagine.
The Hansers failed to forecast any evidence establishing a diminution of value to their property other than plaintiffs' counsel's assertion that he "imagine[d]" there would be expert testimony on the issue if the case proceeded to trial. An assertion by counsel is not a sufficient forecast of evidence under N.C. R. Civ. P. 56(e). Dixie Chemical Corp. v. Edwards, 68 N.C. App. 714, 717, 315 S.E.2d 747, 750 (1984) ("The defendant's assertion that he will produce . . . experts at trial is not a specific forecast as required by the rule. Because the defendant failed to offer evidence to rebut the plaintiff's showing that no genuine issue of fact existed for trial, we hold the trial court properly entered summary judgment for the plaintiff."). The Hansers did not submit any depositions, affidavits, or any other evidence that may be considered on summary judgment, in support of their contention. The Hansers, therefore, failed to rebut the Stonehouses' and RE/MAX's showing that there is no triable issue of fact precluding summary judgment. Summary judgment was properly entered in this case in favor of the Stonehouses and RE/MAX.

II
The Hansers also assign error to the trial court's denial of their "motion for reconsideration of summary judgment." The motion, however, is rendered moot by our conclusion that summary judgment was properly granted in favor of the Stonehouses and RE/MAX in this case. See Nationwide Ins. Co. v. Ojha, 72 N.C. App. 355, 357-58, 324 S.E.2d 292, 294 (holding where trial court properly entered summary judgment, Rule 59 and 60 motions challenging summary judgment were moot), cert. denied, 314 N.C. 331, 333 S.E.2d 488 (1985).
Affirmed.
Judges JACKSON and ROBERT N. HUNTER, Jr., concur.
Report per Rule 30(e).