IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-277

Filed 19 November 2024

Cabarrus County, No. 21CVS2879

THE ESTATE OF JAMES STEVENSON DOBSON and SHEILA DOBSON, Individually, Plaintiffs,

v.

DEBORAH E. SEARS, R.N., MONIQUE M. ELLIS, R.N., ABIGAIL M. MAYTON, and THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, a North Carolina Hospital Authority, d/b/a ATRIUM HEALTH, CAROLINAS HEALTHCARE SYSTEM, CAROLINAS MEDICAL CENTER NORTHEAST, and CAROLINAS HEALTHCARE SYSTEM NORTHEAST, Defendants.

Appeal by plaintiffs from judgment entered 6 October 2024 by Judge R. Stuart Albright in Cabarrus County Superior Court. Heard in the Court of Appeals 24 September 2024.

*The Law Office of Christopher A. Walker, PLLC, by Christopher A. Walker, for the plaintiffs-appellants.*

*Parker Poe Adams & Bernstein LLP, by Chip Holmes and Jessica C. Dixon, for the defendants-appellees.*

*Huff Powell & Bailey, PLLC, by Katherine Hilkey-Boyatt and Jonathan Earnest, for the defendants-appellees.*

*Beth Reeves, for the defendants-appellees.*

TYSON, Judge.

James Steven Dobson, a fifty-eight-year-old man, had recently undergone brain surgery to remove a malignant tumor. He fell while recovering at his home.

After being taken to the hospital and admitted as a patient, he fell again and subsequently died. His wife, both individually and as Executrix of her husband's estate, sued the hospital system, two nurses, and one certified nursing assistant for medical malpractice and loss of consortium. The trial court granted summary judgment and dismissed the claims after striking portions of an expert witness's affidavit and excluding the expert witness's testimony. Plaintiffs appeal. We affirm.

## I. Background

Sheila Dobson ("Wife" or "Executrix") was married to James Dobson ("Decedent"). Decedent was born on 31 July 1960. Decedent was diagnosed with Grade III Anaplastic Astrocytoma, an aggressive brain cancer. He underwent a left frontotemporal craniotomy surgery to remove the tumor at the Charlotte Mecklenburg Hospital Authority ("CHMA") on 13 August 2018.

Decedent was released from a CHMA rehabilitation hospital on 5 September 2018, but he needed assistance and supervision while bathing, dressing, and toileting, and for bed-to-chair transfers. Decedent was able to walk 500 feet with no assistive devices and minimal supervision.

Five days after being released from the rehabilitation center, Decedent fell off the bottom two steps of his front porch. Decedent fell face first on his right side and did not attempt to catch himself. He had abrasions on the right side of his face and his right shoulder. Emergency Medical Services arrived at 4:56 p.m. and transported him to CHMA's hospital in Concord.

While at the hospital, Decedent reported he was getting up from sitting on the porch, began to have visual changes, felt dizzy, and fell forward. Decedent presented at the emergency room as a code trauma and underwent multiple images. His CT scan revealed no acute abnormalities were present.

Decedent was admitted to the hospital at 7:45 p.m. with his Wife present. Deborah Sears ("Sears"), a Registered Nurse ("RN"), was assigned to Decedent's care. She evaluated him as scoring 125 on the Morse Fall Risk scale at 10:14 p.m. She noted Decedent was wearing a Fall Risk armband, and she implemented the following precautions: ensuring adequate room lighting, keeping the patient's bed in a low position, and placing the call device and personal items within the patient's reach. Sears also instructed Decedent to only get out of bed with assistance. Both Decedent and Wife indicated they understood Sears' instructions.

Monique Ellis ("Ellis") and Abigail Mayton ("Mayton") were also assigned to care for Decedent. Ellis is also a RN, and Mayton is a certified nursing assistant ("CNA"). Mayton checked on Decedent during her rounds at 9:09 p.m. and 11:00 p.m. on the evening of 10 September 2018, and at 1:12 a.m. on the morning of 11 September 2018. During these rounds, Mayton documented the following environmental safety precautions had been implemented: "Adequate room lighting, bed in low position, call device within reach, encourage handrail/safety bar use, encourage personal mobility support item use, encourage sensory support item use, non-slip footwear, personal items within reach, sensory aids within reach, traffic path

in room free of clutter, wheels locked."

At approximately 1:25 a.m. on 11 September 2018, thirteen minutes after Mayton's last round, Ellis responded to Decedent's hospital room. Decedent had fallen and suffered a laceration above his left eye and a laceration on his left elbow. Ellis documented Wife was present in the room when her husband had fallen, and she told Ellis she had "heard a loud thud and he hit the floor."

The on-call physician tended to Decedent's lacerations and ordered a head CT scan immediately. The CT scan showed no changes or abnormalities. After the CT scan, Decedent was returned to his room around 2:30 a.m. The medical record reveals a bed alarm was placed on Decedent's bed after his fall at the hospital. A bed alarm was not mentioned in the prior records.

A subsequent MRI scan taken four days later, on 15 September 2018, revealed a fluid collection over Decedent's left cerebral convexity had slightly increased in size. Decedent was discharged on 28 September 2018, but he continued to decline neurologically. He was unable to receive radiation or chemotherapy, and he died on 13 June 2019 from complications due to recurrent astrocytoma.

Plaintiff, individually and as Executrix of Decedent's estate (collectively "Plaintiffs"), filed a complaint on 23 August 2023 against CHMA, Sears, Mayton, and Ellis (collectively "Defendants"). Plaintiffs did not allege Decedent's fall at the hospital had caused his death. Rather, Plaintiffs alleged Sears, Mayton, and Ellis were negligent pursuant to N.C. Gen. Stat. § 90-21.1(2)(a) (2023) by failing to activate

Decedent's bed alarm after he was assessed to be a high fall risk according to the Morse Fall Risk scale and failing to consider and utilize other fall risk precautions. The complaint alleged the acts of Sears, Mayton, and Ellis "are imputed to their employer," CHMA, and CHMA is vicariously liable. Plaintiffs contended "[a]s a direct and proximate result of the joint and concurrent negligence" by Defendants, "Decedent fell out of his hospital bed, suffered disfigurement indicated by a gash requiring staples, neurological decline, [and] incurred a longer hospital stay and medical bills." Plaintiffs further alleged Defendants were grossly negligent, and sought compensatory and punitive damages.

Plaintiffs also filed a corporate negligence claim pursuant to N.C. Gen. Stat. § 90-21.1(2)(b) (2023). Plaintiffs alleged the hospital or nurse administrator should have advocated for Decedent by recommending the implementation of additional safety interventions for the patient. Wife also asserted a claim for loss of consortium.

CHMA, Ellis, and Mayton filed motions to exclude the expert testimony of Plaintiffs' tendered expert, Natalie Mohammed, RN, and for summary judgment on 31 August 2023. Sears also filed a motion to strike Nurse Mohammed's testimony and a motion for summary judgment on 5 September 2023.

Mayton, Ellis and CMHA filed additional materials in support of their Motions to Exclude Expert Testimony and for Summary Judgment on 27 September 2023 and served a brief in support of their motions. Plaintiffs served briefs in opposition to Defendants' respective motions to exclude expert testimony and for summary

judgment on 27 September 2023. Plaintiffs attached an affidavit of Nurse Mohammed ("Mohammed Affidavit") dated 27 September 2023 to their briefs.

Mayton, Ellis, and CMHA filed a Motion to Strike the Mohammed Affidavit on 28 September 2023, asserting the statements in the affidavit contradicted Nurse Mohammed's prior sworn testimony. Sears filed a similar motion to strike Mohammed's Affidavit on or about 29 September 2023. Plaintiffs filed a motion to allow expert testimony of Nurse Mohammed pursuant to Rule 702(e) on 3 October 2023.

A hearing on all motions was held on 3 October 2023, and an order was entered sixteen days later. The trial court granted in part and denied in part Defendants' motions to strike Mohammed's Affidavit, and struck paragraphs 12, 13, 16, 17 and 18 as contradictory to what she testified to during her depositions. The trial court granted CHMA's, Ellis', and Mayton's motion to exclude expert testimony. The trial denied Plaintiffs' motion to allow the expert testimony of Nurse Mohammed pursuant to Rule 702(e) and granted Defendants' motions for summary judgment. Plaintiffs timely entered notice of appeal on 3 November 2023.

## II.   Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III.   Issues

Plaintiffs present three arguments on appeal asserting the trial court erred by:

(1) granting Defendants' motions to strike, because no contradiction existed between the Mohammed Affidavit and Nurse Mohammed's prior testimony; (2) granting Sears' motions to exclude expert testimony and for summary judgement and CHMA's, Ellis', and Mayton's motion for summary judgment, because Nurse Mohammed made the statutorily required connection between the community in which the alleged malpractice took place and a similarly situated community; and, (3) denying Plaintiffs' motion to allow expert testimony pursuant to Rule of Evidence 702(e), because "it would in no way frustrate the purpose of Rule 9(j) or Rule 702 to qualify Mohammed as an expert in this case under Rule 702(e)."

## IV. Motion to Strike

### A. Standard of Review

"Rulings on motions to strike, including motions to strike affidavits, are reviewed more deferentially for abuse of discretion." *Zander v. Orange Cnty., NC*, 289 N.C. App. 591, 598, 890 S.E.2d 793, 799 (2023) (citation omitted).

"A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Hamilton v. Thomasville Med. Assocs.*, 187 N.C. App. 789, 793, 654 S.E.2d 708, 710 (2007) (citation and quotation marks omitted).

### B. Analysis

Nurse Mohammed was deposed on two occasions, 21 April 2023 and 25 May 2023. After her depositions were taken, Defendants filed motions for summary

judgment. Plaintiffs attached Mohammed's Affidavit, dated 27 September 2023, to their responsive briefs.

The trial court ruled paragraphs 12, 13, 16, 17, and 18 of Mohammed's Affidavit were contradictory to her earlier deposition testimony. The trial court relied upon *Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440, 571 S.E.2d 4, 7 (2002), and *Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC*, 240 N.C. App. 337, 342, 770 S.E.2d 159, 163 (2015), in its rulings.

This Court in *Pinczkowski* prohibited a plaintiff from "creat[ing] issues of fact by a last-minute filing of an affidavit which is contradictory to his deposition testimony as a whole." 153 N.C. App. at 441, 571 S.E.2d at 7 (citation omitted). "[W]e have held that a party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony." *Id.* at 440, 571 S.E.2d at 7.

Here, the trial court ruled Plaintiff had attempted to create a last-minute issue of material fact by reviewing Cabarrus County and Concord 2018 demographic information for the first time. At Nurse Mohammed's deposition in April 2023, her opinion of required standard of care was based upon her review of Cabarrus County's demographic information for 2011 and 2012, six to seven years before Decedent fell at CHMA.

Nurse Mohammed's affidavit contradicted her prior deposition testimony about the demographic data she reviewed when forming her opinion of required

standard of care. In paragraph 12 of Mohammed's Affidavit, which was filed one week prior to the hearing on Defendants' motions, Nurse Mohammed testified for the first time that she had reviewed Cabarrus County's and Concord's 2018 demographic information. In paragraph 13 of Mohammed's Affidavit, she also testified for the first time she was aware of the resources in place at the Concord CHMA hospital where Decedent had fallen.

Nurse Mohammed opined in paragraphs 16, 17, and 18 of her affidavit Mayton had breached the applicable standard of care and she had formed this opinion as early as January 2021. This statement also contradicts Nurse Mohammed's prior deposition testimony.

When asked which healthcare providers she would offer opinions about in this case during her 21 April 2023 deposition, she provided the following responses:

> Q: I want to know what the names of – which providers you are going to be offering opinions to.
>
> A: The two nurses, Monique Ellis and Deborah Sears.
>
> Q: Are those the only two providers that you intend to offer opinions to today?
>
> A: Yes.

During her second deposition on 23 May 2022, Nurse Mohammed testified she had formed an opinion about Mayton after reviewing Mayton's deposition, which happened between her two depositions taken in April and May 2023.

In her affidavit on 27 September 2023, Nurse Mohammed stated "contrary to

the line of questioning in my May 2023 deposition, I did form an opinion regarding the breach of the standard of care by Defendant Mayton . . . that I completed in January 2021." She further stated "[i]t was only after Ms. Mayton's deposition did I have more factual information regarding her role in treating [Decedent] and could give a full ('constructive') opinion." In paragraph 18, she attempted to explain her exclusion of Mayton in the list of providers she was offering an opinion, by asserting Mayton was included in the "catch all phrase of 'all nurses.'" Mayton, although a certified nursing assistant, was not a registered nurse when caring for Decedent.

Given the contradictions between Nurse Mohammed's earlier deposition statements and her affidavit attached to Plaintiffs' responsive briefs, Plaintiffs have failed to show the trial court abused its discretion by striking contradictory paragraphs 12, 13, 16, 17, and 18 from Mohammed's affidavit. *See Pinczkowski*, 153 N.C. App. at 440, 571 S.E.2d at 7; *Hawkins,* 240 N.C. App. at 342, 770 S.E.2d at 163; *Zander,* 289 N.C. App. at 598, 890 S.E.2d at 799; *Hamilton*, 187 N.C. App. at 792, 654 S.E.2d at 710. Plaintiffs cannot "create issues of fact by a last-minute filing of an affidavit which is contradictory to [their] deposition testimony as a whole." *Pinczkowski*, 153 N.C. App. at 441, 571 S.E.2d at 7. Plaintiffs' arguments are overruled.

## V.   Motion for Summary Judgment

### A. Standard of Review

The party moving for summary judgment "bears the burden of bringing forth

a forecast of evidence which tends to establish that there are no triable issues of material fact." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998) (citation omitted). We consider the evidence in the light most favorable to the nonmoving party, and "any doubt as to the existence of an issue of triable fact must be resolved in favor of the party against whom summary judgment is contemplated." *Id.*

We review an order granting summary judgment *de novo*. *See Bryan v. Kittinger*, 282 N.C. App. 435, 437, 871 S.E.2d 560, 562 (2022). We determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen Stat. § 1A-1, Rule 56(c) (2023).

"Generally, the trial court's decision to allow or disqualify an expert 'will not be reversed on appeal absent a showing of abuse of discretion.'" *DaSilva v. WakeMed*, 375 N.C. 1, 4, 846 S.E.2d 634, 638 (2020) (quoting *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016)).

## B. Analysis

### 1. *Statutory Standard of Care*

Our statutes provide for two forms of medical malpractice. A plaintiff may bring a claim under N.C. Gen. Stat. § 90-21.11(2)(a) "for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the

performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a) (2023). A plaintiff may also assert a medical malpractice claim under N.C. Gen. Stat. § 90-21.11(2)(b) "against a hospital," or other statutorily allowed health care facility, for breaching their "administrative or corporate duties to the patient," if it "arises from the same facts or circumstances as a claim under" § 90-21.11(2)(a). N.C. Gen. Stat. § 90-21.11(2)(b) (2023).

"Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony." *Smith v. Whitmer*, 159 N.C. App. 192, 195, 582 S.E.2d 669, 671-72 (2003) (citations omitted).

If a plaintiff asserts a claim under N.C. Gen. Stat. § 90-21.11(2)(a), the health care provider shall not be liable unless the trier of fact finds the care provided "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12(a) (2023).

If a plaintiff asserts a claim under N.C. Gen. Stat. § 90-21.11(2)(b), the health care provider shall not be liable for "action or inaction" unless the care provided "was not in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-

21.12(a).

This Court has explained, "[b]y adopting the 'similar community' rule in G.S. 90-21.12 it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers. . . ." *Pager v. Wilson Mem'l Hosp.*, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980).

### 2. N.C. Gen. Stat. § 1A-1, Rule 9(j)

Rule 9(j) requires a plaintiff asserting a medical malpractice complaint under N.C. Gen. Stat. § 90-21.12 to have the medical care and all medical records in question reviewed by "a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2023).

"Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." *Preston v. Movahed*, 374 N.C. 177, 182, 840 S.E.2d 174, 182 (2020) (quoting *Vaughan v. Mashburn*, 371 N.C. 428, 434, 817 S.E.2d 370, 375 (2018)). Our General Assembly intended "to provide a more specialized and stringent procedure for plaintiffs in medical malpractice claims through Rule 9(j)'s requirement of expert certification prior to the filing of a complaint." *Thigpen v. Ngo*, 355 N.C. 198, 203-04, 558 S.E.2d 162, 166 (2002).

"Because Rule 9(j) requires certification at the time of filing that the necessary

expert review has occurred, compliance or noncompliance with the Rule is determined at the time of filing." *Moore v. Proper*, 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012).

Our Rules of Civil Procedure have special pleading requirements for claims brought under N.C. Gen. Stat. § 90-21.11(2):

> (j) Medical malpractice.--Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
>> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>>
>> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>>
>> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*.

N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (italics supplied).

### 3.  N.C. Gen. Stat. § 8C-1, Rule 702(b)

Rule 702(b) of the Rules of Evidence sets forth special standards for admission of standard of care expert witnesses in the medical malpractice context:

> (b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:
>
>> (1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
>>
>>> a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or
>>>
>>> b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.
>>
>> (2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:
>>
>>> a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or
>>>
>>> b. The instruction of students in an accredited

health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2023).

If a plaintiff fails to obtain an expert certification pursuant to Rule 9(j) of Civil Procedure, which incorporates the requirements of Rule 702(b) for standard of care expert witness qualification, the plaintiff has failed to meet the requirements to assert a medical malpractice claim under N.C. Gen. Stat. § 90-21.11(2)(a) or (b).

### 4. *"Same or Similar Community"*

A plaintiff fails to assert a viable claim under N.C. Gen. Stat. § 90-21.11(a) or (b) without an expert who can testify to the "same or similar" requirements in N.C. Gen. Stat. § 90-21.12(a).

This Court affirmed a trial court's decision to grant a directed verdict in favor of the defendant-health care provider, because the plaintiffs' standard of care expert witness had attempted to apply a national standard of care. *See Henry v. Se. OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 212-13, 550 S.E.2d 245, 248, *aff'd*, 354 N.C. 570, 557 S.E.2d 530 (2001). In *Henry*, the plaintiffs argued its desired expert, an obstetrics and gynecological physician, who practiced in Spartanburg, South Carolina, could "competently testify to the prevailing standard of pre-natal and

obstetrical care in Wilmington, because he was familiar with the applicable national standard of care." *Id.* at 209, 550 S.E.2d at 246.

This Court held plaintiffs' expert "was unfamiliar with the relevant standard of care, his opinion as to whether defendants met that standard [wa]s unfounded and irrelevant, and thus [held] that the trial court properly excluded Dr. Chauhan's testimony." *Id.* at 213, 550 S.E.2d at 248.

"To adopt plaintiffs' argument, this Court would have to ignore the plain language of N.C. Gen. Stat. § 90-21.12 and its evidentiary requirement that the 'similar community' rule imposes, as well as well-established case law." *Id.* at 212, 550 S.E.2d at 248. *See also* John M. Tyson, *Statutory Standards of Care for North Carolina Health Care Providers*, 1 Campbell L. Rev. 111, 115-25 (1979); Elizabeth J. Armstrong, *Nurse Malpractice in North Carolina: The Standard of Care*, 65 N.C. L. Rev. 579, 581 (1987); Robert G. Byrd, *The North Carolina Medical Malpractice Statute*, 62 N.C. L. Rev. 711, 716 (1984).

During Nurse Mohammed's first deposition, she explained she was applying a national standard of care:

> Q. Okay. Is the standard of care as you are applying it in this case the same for a nurse practicing in New York as it would be for a nurse practicing in Houston, Texas?
>
> A. Yes.
>
> Q. So it's a national standard of care that you are applying?
>
> A. Correct.

The trial court found Nurse Mohammed, as Plaintiffs' "sole standard of care expert," had "failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community." The trial court further held Nurse Mohammed had "failed to demonstrate that she was sufficiently familiar with the standard of care among members of the same healthcare profession with similar training and experience situated in the same or similar communities at the time of the alleged act[.]" Because Nurse Mohammed was Plaintiffs' sole standard of care expert witness proffered, the "exclusion of testimony from [Nurse] Mohammed renders Plaintiff[s] unable to establish an essential element of her claims, and summary judgment in favor of Defendants [was] appropriate."

Given Nurse Mohammed's express deposition testimony about applying a national standard of care, the trial court did not err by excluding her testimony. *Id.* at 212-13, 550 S.E.2d at 248. Without a competent expert witness to establish the applicable standard of care and negligence, Defendants were entitled to summary judgment as a matter of law. *Id.*

## VI. Rule 702(e)

### A. Standard of Review

"[T]his Court has uniformly held that the competency of a witness to testify as an expert is a question primarily addressed to the court, and his discretion is ordinarily conclusive, that is, unless there be no evidence to support the finding, or

unless the judge abuse[d] his discretion." *State v. Moore*, 245 N.C. 158, 164, 95 S.E.2d 548, 552 (1956).

"Generally, the trial court's decision to allow or disqualify an expert will not be reversed on appeal absent a showing of abuse of discretion." *DaSilva v. WakeMed*, 375 N.C. 1, 4, 846 S.E.2d 634, 638 (2020) (citation and internal quotation marks omitted). "The standard of review remains the same whether the trial court has admitted or excluded the testimony—even when the exclusion of expert testimony results in summary judgment and thereby becomes 'outcome determinative.'" *State v. McGrady*, 368 N.C. 880, 787 S.E.2d 1, 11 (2016) (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 142-43, 139 L.Ed.2d 508 (1997)).

"A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Hamilton*, 187 N.C. App. at 792, 654 S.E.2d at 710 (internal quotations omitted).

## B. Analysis

Plaintiffs argue Nurse Mohammed should have been allowed to testify pursuant to Rule 702(e) of the Rules of Evidence. Rule 702(e) permits a trial court to allow an expert to testify:

> on the appropriate standard of health care by a witness who does not meet the requirements of subsection (b) or (c) of this Rule, but who is otherwise qualified as an expert witness, upon a showing by the movant of extraordinary circumstances and a determination by the court that the

motion should be allowed to serve the ends of justice.

N.C. Gen. Stat. § 8C-1, Rule 702(e) (2023).

Plaintiffs argue "[t]here simply cannot be any legitimate or credible argument that [Nurse] Mohammed is not qualified to render an opinion on the subject of Morse Fall Risk Protocol Implementation and Interventions." Plaintiffs assert Nurse Mohammed is not a "hired gun," and Plaintiffs should "be entitled at a minimum to have [their] day in court."

The record on appeal is devoid of any extraordinary circumstances to support the certification or admission of Nurse Mohammed under Rule 702(e), nor do Plaintiffs argue such circumstances exist. *See Knox v. Univ. Health Sys. of E. Carolina, Inc.*, 187 N.C. App. 279, 284, 652 S.E.2d 722, 725 (2007) (citing N.C. Gen. Stat. § 8C-1, Rule 702(e)). Plaintiffs' argument is overruled.

## VII.    Conclusion

Contradictions existed between Nurse Mohammed's earlier depositions' statements and the affidavit attached to Plaintiffs' responsive briefs. *Pinczkowski*, 153 N.C. App. at 440, 571 S.E.2d at 7; *Hawkins,* 240 N.C. App. at 342, 770 S.E.2d at 163; *Zander,* 289 N.C. App. at 598, 890 S.E.2d at 799; *Hamilton*, 187 N.C. App. at 792, 654 S.E.2d at 710. Plaintiffs' decision to file an affidavit, which was contrary to the expert witness's prior deposition testimony, at the "last-minute" does not create a genuine issue of material fact to deny summary judgment. *Pinczkowski*, 153 N.C. App. at 441, 571 S.E.2d at 7. Plaintiffs have failed to show the trial court abused its

discretion by striking contradictory paragraphs 12, 13, 16, 17, and 18 from Mohammed's affidavit.

The trial court did not err by excluding Nurse Mohammed's deposition testimony. She testified to applying a national standard of care during her deposition contrary to the statutory standard of care. *Henry*, 145 N.C. App. at 212-13, 550 S.E.2d at 248. Without an expert witness to establish standard of care and negligence, Defendants were entitled to summary judgment as a matter of law. *Id.*

Plaintiff has failed to present any "extraordinary circumstances" to justify the certification of Nurse Mohammed under Rule 702(e). *See Knox*, 187 N.C. App. at 284, 652 S.E.2d at 725. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges COLLINS and GRIFFIN concur.